## Yeity's Estate.

*Wills—Personal estate—Gifts for life without a disposition over.*
Where a testator bequeaths his personal estate to his wife "during her natural life," without a limitation over or explanatory words indicating a purpose to restrict her use and interest to a mere life estate, an absolute estate in the personalty passes to the widow.

Argued November 8, 1926. Appeal No. 82, October T., 1926, by Solomon R. Yeity from decree of O. C. Berks County, February T., 1925, No. 58, in the case of Estate of Augustus C. Yeity, deceased. Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ. Affirmed.

Exceptions to adjudication of the estate of the decedent. Before Schaeffer, P. J.

The facts are stated in the opinion of the Court below which was, in part, as follows:

As already stated, the widow having died, the question was raised at the audit as to what interest the testator gave to his wife, Mary E. Yeity, deceased, in his personal estate—was it an absolute gift, or simply a life estate with a resulting intestacy as to the remainder.

The particular clauses in the will of testator which pertain to this question are:

"And as to all the rest, residue and remainder of my estate, real, personal and mixed, of whatever nature or kind, or wheresoever situate at the time of my decease, I do hereby give, devise and bequeath to my wife, Mary E. Yeity, during her natural life.

"And after the death of my said wife I give, devise and bequeath to my son, Charles W. Yeity, all that certain two-story brick house and lot upon which the same is erected, situate at No. 454 South Third Street, Reading, Pa., his heirs and assigns forever.

"And all the remaining of my real estate after the death of my said wife I give, devise and bequeath to my three children, namely, Solomon R. Yeity, Flora Edwards and Katie Seltzer, they to share and share alike, their heirs and assigns forever."

Augustus C. Yeity died testate on February 7, 1924, leaving to survive him his widow, Mary E. Yeity, and

three children, Solomon R. Yeity, Flora Edwards and Charles W. Yeity, the two former being the children with his first wife, and the latter, Charles W. Yeity, being the only child with Mary E. Yeity, his second wife, who survived the testator and died on February 4, 1925. She is also survived by another child, Katie Seltzer, not the daughter of the testator.

The account filed by the executor, which includes only the personal estate, shows a balance of $4,779.06 for distribution. Charles W. Yeity and Katie Seltzer now contend that the entire fund should be distributed to the administrator of their mother, Mary E. Yeity, the widow of testator.

It will be observed that by the aforesaid provisions, testator gave the real and personal estate to the widow during her natural life, and after her death he devised his real estate to his three children and the daughter of his widow. He made no disposition over of the personal estate after the death of the widow, and the position of her estate, therefore, is that since testator gave his personalty to his wife for life without a limitation over, she took an absolute estate in the same.

"The general rule is that a gift of personal property for life, without a gift over, passes the whole estate": Roger's Estate, 245 Pa. 206, 208. That this is a well settled doctrine in this state is supported by ample authority (Semple's Estate 6 D. & C. Rep., 200, 201) and it is conceded that this familiar rule must control here, if the will of the testator as a whole does not disclose a contrary intention. The doctrine that a gift for life, of personal property, without a disposition over, passes the whole estate, is not a rule of law, but a rule of construction in aid of discovery of the testator's intention: Roger's Estate, supra, 208, and, consequently, if there is anything in the will of the testator which discloses an intention to give the widow merely a life interest in the personal estate,

it must be carried out, and the rule is not applicable: Semple's Estate, supra.

"With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive." But all of these canons are subservient to the contrary rule as to intent, and are made to aid, not to override it": Woelpper's Appeal, 126 Pa. 562; McCullough's Estate, 272 Pa. 509, 513.

It will be observed that the testator gives "all the rest, residue and remainder of my estate, real, personal and mixed, of whatever nature or kind, or wheresoever situate at the time of my decease ...... to my wife, Mary E. Yeity," for her natural life, and after her death he devises all the real estate to the aforsaid four children. He makes no reference to any disposition of the personalty after the wife's death, nor does he indicate in any manner that the words "during her natural life" in this particular instance shall not have the force and meaning with which they are to be regarded where no intent to limit or qualify their usual import and effect is apparent. It has been argued that the language for "her natural life" means no more than what it says, and that it clearly shows that testator did not intend to give her an absolute interest in the personalty. This contention would be sound if there had been a disposition over after the death of the widow, or explanatory words indicating a purpose to restrict her use and interest to a mere life estate. This case differs from Freeman's Estate, 220 Pa. 343, which is strongly relied on by the two children of the testator. In that case "the net income of the real and personal estate was given to the wife during the term of her natural life without giving security

as a life tenant thereof." There was no limitation over after the death of the wife. It was held the manifest intention of the testator was that his wife should take only a life estate, because he relieved her from giving security to preserve the corpus of the estate. It was pointed out that the words, "without giving security as life tenant thereof" would be meaningless if an absolute estate had been intended (see Semple's Est., supra).

In the case at bar we have no such direction or modification, nor is there anything in the will which indicates that the wife is to have only a life estate in the personalty and that the words for "her natural life" are not to have the meaning which they are presumed to have, where there is no limitation over.

The further contention, however, is made that we must put ourselves in testator's place in order to determine what he meant by his will (Shaffer's Estate, 262 Pa. 15), and from that standpoint consider the will and interpret its meaning in the light of all the circumstances by which he was surrounded when he made it, and by which he was probably influenced; and that in the construction of wills the general and controlling rule is that the intent of the testator shall prevail: Woelpper's Appeal, supra 562; Peterson's Estate, 242 Pa. 330, 339. While it is true that these rules are of paramount importance in the interpretation of wills, yet in the language of Mr. Justice SIMPSON in Yates' Estate, 281 Pa. 185, "when we have reached that coign of vantage, we must still declare the meaning of the language used, and not some other possible but undisclosed purpose. Were this not so, verbal wills might become quite common, despite the requirement of the Wills Act."

It is insisted that these rules permit us to travel outside the will in order to find the true way of construction and consider the character of the estate and

the situation of the testator at the time the will was made. And it is argued, also, that as regards the intention of the testator, the will is to be construed as of the date of the execution (Peterson's Estate, supra), and that such a construction would clearly show that the testator did not intend the phraseology employed in this will to mean anything more than that the widow was to have only a life interest in the personalty, the same as she had in the real property. It is admitted on both sides that at the time the will was executed the personal estate amounted to only a few hundred dollars and some physical effects of little value, and that the bulk of his estate consisted of real estate. It appears that after the will was executed, he converted some of the real estate into money, and this accounts for the personal estate which he had at the time of his death. The argument is made that these facts demonstrate that he never intended to give his personalty to his wife absolutely and thus deprive two of his children of a large portion of his estate.

Now it seems to us that these circumstances make against the contention for merely a life estate, because when testator executed his will, his personal property amounted to very little, and with this fact in mind he may have felt that it would be consumed by the widow, who would need it, and that it was not necessary to make a disposition over of what was left. This was doubtless the reason for not containing the personalty in the residuary clause, which was obviously prepared with care. Construing the will, therefore, as of the date of its execution, on the theory advanced and in the light of these facts (Semple's Estate, supra), it is not difficult to see that he expected his wife to consume the personalty, and therefore did not deem it necessary to make any further provision about it. This interpretation of the situation at the time tes-

tator made the will supports the view that she was to take an absolute estate and that the words "for her natural life" were to have the effect and significance which the rule of construction adopted in such cases gives them.

We are asked to find, however, that because he changed the assets of his estate and added largely to his personal estate, he did not intend the language used to have the same effect now as it had when he made the will. The argument is made that he did not appreciate the importance of altering his will and did not know and never intended that the personalty should belong absolutely to his wife. It would be the merest conjecture to allow that this is the correct solution of the question, because how do we know that he did not wish the will to be construed as of the date of its execution, and that he had changed his mind as to the interest the wife was to take, because he had converted some of his real estate into money. There is nothing in the will which shows that the testator did not intend to confine it to the state of affairs existing when it was made, and, therefore, the construction must be made to conform with such an intention. Again, to adopt this view would result in an intestacy, which is to be avoided if any other interpretation can reasonably be made. This will was evidently prepared with care and study, and it seems clear that the testator intended to dispose by it of his entire estate.

It is a plain and simple will, with the proper residuary clause, showing clearly that he intended to make a full disposition of his entire estate. As was said by our Supreme Court in Keene's Est., 221 Pa. 201, 211: "In arriving at the intention of a testator, courts do not look with favor upon a construction of a will which leads to an intestacy, and especially is this true where, after having made specific bequests and devises cover-

ing a large part of the estate, there is a residuary clause evidencing an intention to dispose of every part of it. An intestacy is never favored and a construction should not be adopted which leads to such a result if it can be avoided by a reasonable interpretation of the will." See, also, Kenworthy's Estate, 269 Pa. 315.

In the will before us it is manifest that the testator intended to dispose of his entire estate, and in the absence of anything in the will indicating that the words disposing of the personalty for life without a limitation over were to be confined to a mere life interest, we are constrained to hold that the rule of construction, that a gift of the personalty for life without a limitation over passes the whole estate, must be followed in this case, and that, therefore, the wife took an absolute interest in the personal estate; and the distribution of it will be made to her representatives.

In disposing of the exceptions to the adjudication the Court below said:

The exceptant maintains that the language of the will and the circumstances surrounding the testator when he made it, and by which he was probably influenced, show that his wife was to have no more than a life estate in the personal property. The argument was made again that the language "for her natural life" means no more than what it says, and that it cannot be reasonably construed to mean that the wife of the decedent was to take the personal estate as her absolute property.

We answered this contention in the opinion filed in this case by pointing out that since there is no disposition over after the death of the widow, or explanatory words indicating a purpose to restrict her use and interest to a mere life estate, the general rule laid down in Rogers' Estate, 245 Pa. 206, that a gift

of personal property for life, without a gift over, passes the whole estate, must control here, and the widow, therefore, takes an absolute interest in the whole personal estate.

In support of the position of exceptant, counsel cited Reynold's Estate, 175 Pa. 257, and urged that it was there held that when testator gives his personal estate to his wife "for and during her natural life," she takes only a life estate therein. The first paragraph of the syllabus in that case contains the general statement that where the whole estate is given for life with no disposition over, the taker receives only a life estate. The language of this paragraph is, however, amplified in the second, where it is clearly pointed out that the estate in dispute consisted only of realty, and that there was no title to personalty involved. The opinion in the case shows that the only matter before the Court was the proper distribution of a fund which arose from the sale of real estate. The question of what interest one takes in personalty given for life was not considered, because there was no personal property in the estate before the Court. That case, therefore, did not change the rule of construction that personalty given for life, without a disposition over, passes an absolute interest therein.

We have carefully considered the matters urged at the argument of the exceptions, but find no reason for altering the conclusion we reached in our adjudication, where we considered the case at length, and cited the authorities bearing on this question.

Solomon R. Yeity appealed.

*Errors assigned* were to the dismissal of appellant's exceptions to the adjudication.

*Silas R. Rothermel,* and with him *Ira G. Kutz,* for appellant.

*H. Robert Mays,* and with him *Earle I. Koch,* for appellee.

PER CURIAM, March 3, 1927:

At the adjudication by the Orphans' Court of Berks County of the estate of Augustus C. Yeity, who died testate on February 7, 1924, several issues between the parties in interest were considered and determined but the only one involved on this appeal relates to the interest which testator's wife took in his personal estate under the provisions of his will. She survived the testator approximately one year and died intestate. The question raised at the audit was whether the interest given her by the will of her husband in his personal estate was an absolute gift or merely a life estate with a resulting intestacy as to the remainder. It was held that testator's widow took an absolute interest in his personal estate and as the account then before the court included only personalty the balance for distribution was awarded to her personal representative. Solomon R. Yeity and Flora Edwards, son and daughter of testator by a former wife, each filed exceptions to the adjudication which were dismissed in an opinion and decree filed January 16, 1926. From the decree then entered the son, Solomon R. Yeity, took this appeal.

The opinion of the late president judge of the court below, Hon. H. D. SCHAEFFER, supporting the adjudication, which will appear in the report of this case, is so clear, comprehensive and convincing that the assignments of error are dismissed and the decree affirmed thereon at the cost of the estate.