## Scott's Estate.

Argued October 2, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*William S. Doty,* of *Doty & Thornton,* with him *James
McGill Boyer* and *C. L. V. Acheson,* for appellant.

*Harry A. Jones,* with him *McIlvaine & Williams,* for
appellees.

OPINION BY MR. JUSTICE SCHAFFER, November 27, 1933:

We are called upon to construe the will of J. Kerr Scott. After directing the payment of his debts and funeral expenses, he provided: "I will and bequeath a certain lot of land and dwelling which we now live, to my wife her natural life she to pay tax and nesisay repair on said property her life time, also I will all household goods which I now own to my wife her natural life, I will the intrest on notes and money which I have in banl [bank] to my wife."

The controversy is over the last sentence, "I will the interest on notes and money which I have in bank to my wife." The orphans' court decided that the wife took but a life estate in the notes and money and that there is an intestacy as to the remainder and accordingly awarded to her one-third of the personal estate and directed either that she give bond to secure those entitled to take in remainder or that a trustee be appointed. From this adjudication the widow appeals.

It is the contention of appellant's counsel, first, that as the testator specifically limited her interest in the real estate and household goods to her life and did not place such a limitation on the notes and money in bank, as to them he intended no such circumscribing, and, second, that, under the rule in McKinstry's Est., 296 Pa. 185, and other cases, a gift of the entire income, without express provision for the disposition of the residue, vests the entire estate in the one benefited, the widow is entitled to the notes and money absolutely.

As to the first position, it will be observed that what the testator gave was the interest on the notes and money. He knew from experience what interest is. He had received it. He knew it could be paid to his wife only so long as she lived, and that her death would terminate both her need for and reception of it. It is fair to conclude that in his mind a bequest of the interest was the same thing as a life limitation.

As to the second proposition, that the gift of the entire income from the notes and money in bank was an absolute disposition of the principal, it is to be noted that the will was written by an illiterate scrivener, who certainly had no knowledge of the rule now sought to be applied in its construction. When we come to consider testator's circumstances and situation, as we should (Brooklyn Trust Co. v. Warrington, 277 Pa. 204), we find that the appellant was his second wife, that she was up in years and that he had two living children by his first wife. It was the natural thing to protect his wife for her lifetime and to allow his estate to go to his children when she should die.

The rule sought to be invoked is one which operates where there is nothing in the will to show a different intention (Garrett v. Rex, 6 Watts 14, 17; Fell's Est., 6 Pa. Superior Ct. 192, 194), and should not operate to frustrate the testator's intent, if it can be gathered from the will, as we think it can in this case. "In the construction of wills the great general and controlling rule is that the intent of the testator shall prevail. And by his intent is meant his actual intent. It is often said, ......as quoted in Hancock's App., 112 Pa. 532, ...... 'The question in expounding a will is not what the testator meant, but what is the meaning of his words.' But by this it was never intended to say that the testator's meaning when apparent can be disregarded, but that it cannot be got at aliunde, by what he might have meant, or even what under the circumstances perhaps he would have meant, but only by what he said. The search is confined to his language, but its object is still his meaning. With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain more or less artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive. But all of these canons are subservient to

the great rule as to intent, and are made to aid not to override it. As in all such cases, care is required that tools shall not become fetters, and that the real end shall not be sacrificed to what was intended only as the means of reaching it": Woelpper's App., 126 Pa. 562, 572. See also Brooklyn Trust Co. v. Warrington, 277 Pa. 204; Deeter's Est., 280 Pa. 133. We believe that the evident intent of the testator was to provide his wife with a home for life, and during that time to give her the use of the household furniture, and the interest on the notes and money in the bank.

Decree affirmed at appellant's cost.