## Hilles' Estate

*Bunting & Satterthwaite*, and *William R. Stuckert*, for exceptants.

*Frederick Macombe Gumbes*, contra.

BOYER, J., June 18, 1934.—This matter arises upon exceptions filed to the report of the auditor appointed by this court to make distribution of the balance in the hands of the executor of the above decedent. The exceptions were filed by heirs at law of the testatrix, Margaret G. Hilles. While a number of different exceptions were filed, they all relate to construction of the will of testatrix and the distribution made in accordance with that construction. The exceptions can therefore all be considered together, the real question before the court now being one of the construction of the decedent's will.

Margaret Hilles died on April 26, 1931, testate and leaving to survive her a husband, William Hilles, but no children. · William Hilles died on January 23, 1933. She also left to survive her three brothers and children of a deceased sister, who would be her natural heirs if she died intestate as to any part of her

estate. Her will was a holographic will, dated March 17, 1914. It was as follows:

"March 17, 1914.

"I want William Hilles to have the use of all my money his lifetime.

"MARGARET G. HILLES."

Letters of administration c. t. a. were granted to Doylestown National Bank & Trust Company, which administered the estate and held the assets during the lifetime of William Hilles, the surviving husband, and paid the income or interest from the estate to him. After his death, his executor claimed the entire principal of the estate upon the theory that under the provisions of the will the entire estate was vested in him absolutely as sole legatee. The heirs of Margaret G. Hilles claimed the entire balance of the estate, on the theory that under the will the surviving husband had only a life interest in his wife's estate and that she died intestate as to the remainder. The learned auditor in a very full and clear discussion of the will concluded that the surviving husband took an absolute estate under his wife's will and awarded the entire balance to the executor of the husband's estate.

The auditor and counsel on both sides were agreed that the words "all my money" included all her personal estate, which consisted of cash, stocks, bonds, etc. It is also conceded that if the provisions of the will amount to a bequest of a life estate to William Hilles, then the testatrix died intestate as to the remainder interest in the corpus of her estate, which in that event passed to her next of kin under the intestate laws. William Hilles never filed any election to take under or against the will of his deceased wife and must therefore be held to have elected to take under her will. Under the law of Pennsylvania, this would bar him from sharing in the portion of her estate of which she may have died intestate. Neither can his personal representatives or heirs elect to take against the will for him: Jackson's Appeal, 126 Pa. 105.

The exceptions raise a simple clear-cut question as to the interest bequeathed by the decedent to her husband, namely: Did she bequeath a life interest or an absolute estate to him? The first question to be determined is whether the will, by its terms, discloses the intent of the testatrix. If it does, then there is no necessity for invoking any of the numerous rules of construction which the courts have from time to time applied in interpretation of wills. The cardinal rules as to interpretation of wills are: First, that it is the actual intent of the testatrix which is to be ascertained and which, when ascerained, must control; and second, that such intent must be ascertained from the "four corners" of the will itself, giving force and meaning to all the language used by the testatrix, if possible. It should be assumed that a testatrix had some reason or purpose for the use of every word and phrase in the will. In searching for the meaning of the testatrix, words should be given their ordinary and usual colloquial use or meaning, except where technical legal terms are used. In approaching this question, the court should keep in mind such surrounding circumstances as the fact that it is a holographic will written by a woman apparently advanced in years, rather illiterate and of limited education; that she had a husband living and no children, but collateral heirs, namely, brothers and children of a deceased sister. From the extreme brevity of the will, it might be assumed that she was a woman who expressed herself, at least in writing, in few words: Scott's Estate, 313 Pa. 155. If, after such a study of the will, there is doubt as to the meaning of the will, then the canons of construction may be invoked to assist in arriving at the intent of the testatrix.

If the testatrix intended her husband to take an absolute estate, then that intent could have been sufficiently, and far more clearly, expressed by saying: "I want William Hilles to have all my money." If that was her intention, then the words "the use of" and "his lifetime" would be superfluous and have no meaning. In other words, they would have to be rejected as meaningless. However, it is the duty of the court to give all her language some meaning, if possible. The court has no right arbitrarily to reject a part of the phraseology of the will unless it is impossible to give it any meaning consistent with any reasonable construction of the will as a whole. In France's Estate, 75 Pa. 220, 225, the court, by Mr. Justice Mercur, said: "Giving the construction asked for her [the widow], prevents due effect being given to the later clause, devising the land to the son. By holding then that the wife took a life estate only, as we do, it gives effect to the latter clause, and does no violence to any part of the will. It gives effect to every word and harmonizes the whole instrument."

The exceptants contend that those words were used advisedly by the testatrix to indicate her intent to give something less than an absolute estate to her husband. They contend that by those additional words she indicated her intent to give him only the benefit, profit, or income from her estate during his lifetime. We are compelled to agree with this construction of the will. The language was used by a layman and should be viewed from the standpoint of a layman, undistorted by technical rules of construction. No doubt, to this testatrix a gift of the use of money for a lifetime meant something entirely different from an outright gift of the money itself. We are convinced that she used the term "the use of" money to indicate that he was to have the benefit or income from it, but to remove all doubt as to her meaning she added the final words "his lifetime". The words "his lifetime" are of real value in interpreting the word "use". It is true that use of money, by itself, might mean the right to spend it, as where a man gives his son a sum of money "for his use". Ordinarily such "use", with delivery of physical possession, would mean the right to spend it. But if he gave him such a sum for his use for a certain number of months, that use would then be curtailed and would imply a return of the money or its equivalent at the expiration of the time limited. It would not then mean an absolute ownership. Likewise, if this testatrix had given her husband the use of all her money for the period of 10 months after her decease, nothing could be clearer than that it contemplated the benefit or income of the money for or at least a return of the money at the end of that period. If she bequeathed the use of the money for the balance of his life instead of for a definite number of months, there is no reason to suppose that she had any different intent. We feel that this intent to give the income or life interest only, appears from the text of the will with such clearness that it is not necessary to invoke any of the rules of construction to aid in its interpretation.

The courts have frequently held that the well-known rules of construction of wills are to be resorted to only in cases of doubt. In Yeity's Estate, 90 Pa. Superior Ct. 130, 133, the court said: " 'With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive. But all of these canons are subservient to the contrary rule as to intent, and are made to aid, not to override it': Woelpper's Appeal, 126 Pa. 562; McCullough's Est., 272 Pa. 509, 513."

In Scott's Estate, 313 Pa. 155, 157, the court, holding that the rule that a bequest of all income from personal property, without limitation as to time, is

an absolute gift of the principal should not control, said in part: "The rule sought to be invoked is one which . . . should not operate to frustrate the testator's intent, if it can be gathered from the will, as we think it can in this case. 'In the construction of wills the great general and controlling rule is that the intent of the testator shall prevail. And by his intent is meant his actual intent. . . . The search is confined to his language, but its object is still his meaning. . . . Courts have established certain more or less artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive. But all of these canons are subservient to the great rule as to intent, and are made to aid not to override it. As in all such cases, care is required that tools shall not become fetters, and that the real end shall not be sacrificed to what was intended only as the means of reaching it': Woelpper's App., 126 Pa. 562, 572. See also Brooklyn Trust Co. v. Warrington, 277 Pa. 204; Deeter's Est., 280 Pa. 135."

We believe that the auditor fell into error in this respect. He apparently attempted to construe this will by the use of rules of construction, instead of first ascertaining whether the will required the application of any of those rules. There is also danger of the courts laying too much stress on the first rule which the auditor applied, namely, that where a will is capable of either of two constructions, that construction should be adopted which will avoid a total or partial intestacy. There is danger of looking upon a partial intestacy as being illegal and abhorrent to the law, and that such an effect must be avoided in every event and even to the extent of making strained or artificial interpretations. It must be remembered that this canon is only a rule of presumption, it being reasonable to suppose that where a man went to the trouble of making any testamentary dispositions of his estate he would be likely to dispose of his entire estate. However, where it is plain that he did not do so or did not wish to do so, his intent must be respected and carried out. In this case, it is perfectly reasonable to suppose that this testatrix was entirely satisfied with the disposition which the intestate law would make of her estate with an exception as to the interest which it would give to her husband, and that, having provided for him an interest perhaps better suited to his age, she was satisfied that the remainder should be disposed of according to the intestate laws.

Counsel for all the parties in interest appear to agree upon the general rules of law that, barring any expressed intent to the contrary, a bequest of the corpus of the personal estate for life without limitation over is a bequest of an absolute interest, that a bequest of all of the income from personal property without limitation as to time is also a bequest of the corpus or principal itself, and that a bequest of income for the life of the legatee without a remainder over is a bequest of a life estate only and an intestacy as to the corpus of the estate. Therefore, if this will amounts to a bequest of the income of the personal estate to William Hilles for his lifetime, as we have found, then Margaret G. Hilles died intestate as to the principal.

The chief doubt which we have had as to the construction of this will was raised by the citation by the auditor of the case of Patterson, Exec., v. Stewart, 38 Mich. 402, in which the testator had used an expression almost identical with that of the will under construction, namely, that his wife should have "the use of all my moneys during her natural life", and quoting the court as deciding that the word "use" did not mean interest but enjoyment during her lifetime as she might have occasion. The full text of the decision was not given to the auditor but has since been submitted to this court. An examination of the case shows that there was a devise of real estate, personal property, and furniture

to the testator's wife forever and "also to have the use of all my moneys during her natural life. . . ." The third paragraph provided "Residues of the money shall be divided share and share alike between my nephews. . . ." The sole question raised and actually decided by the court was that the widow was entitled during her lifetime to the possession of a certain mortgage as against the executor who claimed that she was entitled to the interest only. While the court expresses the view that the bequest of the "use" of his moneys might "imply the possession of the monies and the putting them to the use of the legatee as she may have occasion", the court reaches this conclusion largely because of the employment of the word "residues" as tending to designate what might be left at her death. It is therefore apparent, first, that this expression of opinion by the Michigan Court was nothing more than a dictum; and second, that it was based largely on language which was not used in the will in the present case. We are of opinion that this decision does not support the conclusion reached by the auditor in this case and is certainly not controlling.

Now, June 18, 1934, the court adjudges and decrees that William Hilles took only a life interest in the principal of the fund now to be distributed and that the testatrix died intestate as to the remainder interest in said fund, which thereupon vested in the heirs at law of the said Margaret G. Hilles, deceased. The auditor's schedule of distribution is revoked and set aside.

From Isaac J. Vanartsdalen, Doylestown.