## Mitinger's Estate.

Argued April 20, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*John G. Stephenson,* with him *Robert D. Noel, Harry E. Cope, James Milholland* and *Alter, Wright & Barron,* for appellants.

*Fred B. Trescher,* of *Kunkle, Walthour & Trescher,* with him *George E. Barron,* for appellees.

OPINION BY PARKER, J., September 28, 1938:

In these three appeals from an order of an orphans' court by persons similarly affected we are required to construe the will of John F. Mitinger. The primary question involved is the nature of the interest taken under that will by Lizzie Mitinger, a sister of testator. The question was raised on a petition by two nephews and a niece of the testator praying that the present owners of a parcel of real estate, part of decedent's estate, be required to satisfy an alleged charge on the land or that on default the real estate be sold to pay the charge under the provisions of §25 (a) of the Fiduciaries Act of 1917 (20 PS §652). The petition was dismissed.

John F. Mitinger died August 1, 1904 leaving to survive him a sister, Lizzie Mitinger, and four brothers, one of whom, Charles A. Mitinger, was the father of the three petitioners. By his will John F. Mitinger first devised and bequeathed to his sister his residence, household goods, a horse and phaeton and "also the sum of Sixty $60.00 Dollars , per month, to be paid her monthly out of my [his] main street property as hereinafter [thereinafter] directed during her natural life or during the time she remains unmarried." This was followed by individual bequests to members of his family, employees and friends and by bequests for charitable and religious purposes.

By the seventh and parts of the eighth paragraphs of the will it was provided: "Seventh. In order to always hereafter provide for the support and maintenance

of my only sister, Lizzie Mitinger, in comfort I do hereby charge my Main Street property (known as the Mitinger Block in Greensburg, Pa., adjoining the Methodist Church on the South, Thomas M. Hammer on the North and an alley on the East) with the sum of Ten Thousand (10,000.00) Dollars. The interest thereon to be paid to Lizzie Mitinger aforesaid monthly during her life or as long as remains single and at her death the principal thereof to her heirs. The said payment of interest on said charge is not to begin until the sale of said property and after said sale the interest on the Ten Thousand Dollars charged on said real estate is to be in lieu of the Sixty 60.00 Dollars per month which she is to receive out of the rents by the bequest in paragraph 'Second' above. Eighth. I give devise and bequeath unto my brothers and sisters, to wit:—to William L. Mitinger, James M. Mitinger, Charles A. Mitinger, Lizzie Mitinger and Dr. Joseph F. Mitinger and their heirs and assigns all the rest and residue of my estate, real and personal, subject nevertheless to the following provisions ...... 2nd. It is my intention that my sister Lizzie's share in the Main Street property shall always be at least Ten Thousand $10,000.00 Dollars secured and payable as above, but if on the sale of said Main Street property her share of the purchase price should be more than Ten Thousand Dollars, she shall receive the excess in Cash, but if it sells so that her share would be less than Ten Thousand Dollars, she shall still have Ten Thousand Dollars secured and payable as above and the balance of said purchase price in the event shall be divided among my four brothers. 3rd. In Case of the death of any of my said brothers or sister, before my death. The heirs of the one so dieing shall get the legacies of said decedent."

By the 4th section of the eighth paragraph his executors were to have exclusive control and management of the Main Street property for five years, "keep up

repairs and make necessary improvements and pay to my [his] sister, Lizzie, the Sixty 60.00 per month willed to her in paragraph 'Second' and the balance of said rent shall be divided annually among my [his] said brothers and sister. My [his] sister is not to receive more than Sixty 60.00 Dollars per month out of said rent unless her share of said rent shall net more than Sixty Dollars, per month. If it does she is to receive her share of the excess with the rest."

It is asserted, and we will so assume, that the net income from the undivided one-fifth of the Main Street property was at all times sufficient to pay the $60 per month and that Miss Mitinger received more than that amount. By various deeds and devises the undivided four-fifths of the Main Street property became vested in J. Edward Mitinger and Robert B. Mitinger, nephews of the original testator, and the remaining one-fifth in William L. Mitinger and Elsie S. Mitinger, his wife, as tenants by entireties, subject to such interest or charge, if any, as passed from the original testator directly to the heirs of Lizzie Mitinger on her death. Lizzie Mitinger died November 15, 1936 and by her will devised and bequeathed all her undivided interest in the Main Street property which had been devised to her by her brother, John F. Mitinger, to her nephews J. Edward Mitinger and Robert B. Mitinger, two of the respondents.

Briefly expressed, it is the contention of the appellees, the respondents, that Lizzie Mitinger took a fee simple in the undivided one-fifth of the Main Street property, which interest passed to them under her will freed of any charge; that the provision in the seventh paragraph was merely a device employed by the testator to assure the receipt of $60 monthly by Lizzie Mitinger during her life; that since the property was never sold the seventh paragraph never became applicable; and that the charge only extended for her lifetime.

The appellants contend that the will of John F. Mitinger created a charge of $10,000 upon the real estate, which sum passed by the express terms of the will of John F. Mitinger to the heirs of Lizzie Mitinger on her death and that the petitioners are heirs of Lizzie Mitinger entitled to one-third of that sum. We will more fully develop the respective contentions as we proceed.

The theory of the appellees is not that which the orphans' court adopted in dismissing the petition. As it is clear that the order cannot be sustained on the ground stated by that court and the argument of the appellees does not follow the reasoning in that opinion we will defer consideration of the court's position until later.

We do not believe that the respondents' position is tenable for to so hold would do violence to the plain words of the will and would be contrary to the intention of the testator as we gather it from the entire will. It is a cardinal rule for the interpretation of wills that the intention of the testator is to be gathered from the plain language of the will: *Moyer's Estate,* 280 Pa. 131, 134, 124 A. 331; *Scott's Estate,* 313 Pa. 155, 169 A. 73; and that no provision of the will will be disregarded or treated as surplusage unless no other conclusion is reasonably possible: *Joyce's Estate,* 273 Pa. 404, 117 A. 90.

The seventh paragraph of the will specifically creates a charge of $10,000 upon the Mitinger Block and provides that interest thereon shall be in lieu of the $60 per month previously bequeathed and directs that there be paid to Lizzie Mitinger for her lifetime the income thereon and that at her death the $10,000 designated as principal should be paid to her heirs. This intention is expressed in plain words and not only do we find nothing in the will to the contrary but several other provisions are in harmony with and make clear that intention.

The testator disclosed a paramount interest in his unmarried sister by making provision for her before he considered the claims of others, natural objects of his bounty. In this connection he said: "In order to always hereafter provide for the support and maintenance of my only sister, Lizzie Mitinger, in comfort, I do" etc. To accomplish his desire he assured her of an income by charging the bequest on a valuable business building instead of giving her a principal sum which might be dissipated. This income was to continue for her life if she remained unmarried. If the property sold for a price so that one-fifth of the purchase price was more than $10,000 then she was "to receive the excess in cash." This provision implied that she was not to receive the $10,000. If the one-fifth brought less than $10,000 that sum was still to "remain secured", thus evidencing an intention that the charge should remain. He did not stop there but specifically directed that at her death the principal of $10,000 should be paid to her heirs.

The respondents are claiming by virtue of the residuary clause but prior to that clause the bequests to her and to her heirs were made and secured by a charge on the real estate. The residuary gifts were made subject to the previous gifts and specifically to this charge. Consequently, we have not a case for the application of the principle that an absolute gift in fee simple is not to be cut down by words of doubtful import for the gifts made in the clause under which respondents claim are expressly made subject to the charge. There was here no dominant purpose exhibited by the testator to vest a fee in Lizzie Mitinger as was the case in *Smith v. Bloomington Coal Co.*, 282 Pa. 248, 127 A. 627, cited by the appellees. The dominant purpose expressed here was just the reverse.

We cannot assent to the argument of respondents that the seventh paragraph is "applicable only if and

when the property is sold." That paragraph does not contain any such limitation and the provisions of the second section of paragraph Eighth are directly to the contrary for it provides as we have shown for the preservation of the charge.

It remains to inquire whether the rule in Shelley's case defeats the operation of the testator's clear intent. This contention of the appellees is answered by *Dull's Estate*, 217 Pa. 358, 66 A. 567. In that case testatrix gave to her son " 'Ross B. Dull the interest on Two Thousand Dollars, to be paid to him semi-annually, the principal to remain properly secured in the farm on which I [she] now reside[s] during his natural life, and at his death the principal shall be paid to his heirs.' " In holding that Ross B. Dull was not entitled to the principal the Supreme Court said: "It may be conceded that a devise of realty in the words of this testatrix's will would create a fee. But this is under the rule in Shelley's case, which has become a rule of property, and operates without regard to the donor's intent, and generally to defeat it. But the cardinal rule which dominates all others in the construction of wills is that the intent of the testator if not unlawful shall be carried out. The exception made by the rule in Shelley's case does not extend to bequests of personalty, and though the analogy may sometimes in default of better guide be followed, it is never allowed to defeat a plain intent." There have been numerous statements made in appellate court decisions that the rule in Shelley's case does not apply to personal property. In *Hurd's Estate*, 305 Pa. 394, 401, 158 A. 174, the Supreme Court said: "It is also urged that by the use of the words 'heirs at law' in the clause being considered, the wife was really given a fee, under the rule in Shelley's Case, which gift lapsed because she did not survive testator. The rule has no applicability, however, where, as here, the estate is all personalty (*Gilmor's Est.*, 154 Pa. 523; *Wunder's Est.*,

supra; *Simpson's Est.,* 304 Pa. 396) ; nor where, also as here, the gift to the life tenant is of an equitable estate, and that to the remainderman is a legal one: *Little v. Wilcox,* 119 Pa. 439; *Eschback's Est.,* 197 Pa. 153." Also see *Benefactor B. & L. Assn. v. Latta,* 106 Pa. Superior Ct. 156, 163, 161 A. 757.

We believe the appellees fell into error in overlooking the fact that the gift of the principal to the heirs was in a clause prior to the residuary clause and that it is the effect of the word "heirs" in the prior clause that we are considering and that there is an express exception in the residuary clause limiting its effect. The legislature by the Act of July 15, 1935, P. L. 1013 (20 PS §229) radically modified the effect of the rule in Shelley's case. While that act is not directly applicable it indicates an intention on the part of the legislature to make a marked change in the law. Under such circumstances we certainly would not extend the rule in Shelley's case beyond the clear import of previous decisions.

The court below in its opinion relied upon a different theory, holding in effect that if the petitioners, the appellants, had any interest, such interest had by two conveyances been vested in the respondents. On August 22, 1913, Charles A. Mitinger, the father of the petitioners, by warranty deed conveyed to Dr. J. E. Mitinger and James Mitinger, brothers of the original testator, all his interest in the undivided one-fifth of the Main Street property. It may be conceded that by the doctrine of estoppel a subsequent interest acquired by Charles A. Mitinger would pass to the grantees to make good his previous conveyance if he later acquired such an interest. However, the interest now in controversy was never owned by Charles A. Mitinger. That interest passed by the will of the original testator directly to the heirs of Lizzie Mitinger and she died long after the decease of Charles A. Mitinger. Charles A. Mitinger

was not an heir of his sister, Lizzie Mitinger; *nemo est haeres viventis.*

By deed dated January 13, 1936, the three petitioners quit claimed to two of the respondents "all their right, title, interest, claim and demand, of, in and to" the Main Street property. But that conveyance was made subject to this condition: "IT IS UNDERSTOOD AND AGREED BY AND BETWEEN the parties hereto that this conveyance shall convey and release to the grantees all the present interest of the grantors in and to the above described premises. It is further understood and agreed that the same shall not operate as a bar to any right or title which the said grantors may acquire subsequent to the execution of this deed." As we have seen, the rights now claimed did not vest in the grantors until the death of Lizzie Mitinger on November 15, 1936. That was an interest subsequently acquired and was excluded by the express terms of their conveyance. Even assuming that the doctrine of estoppel were extended so that in the case of a quit claim deed an interest subsequently acquired would be for the benefit of the grantees, this deed expressly provided to the contrary.

The order in each appeal is reversed with a procedendo.