# Appeal of Dodge et al.

1. The technical meaning of the word "heirs" must be given to it when used in a will, unless there is a clearly expressed intent to the contrary.

2. A testatrix died, leaving surviving her two daughters, A. and B., and a son, C. By her will she devised certain real estate to a trustee in trust to pay one-third of its income to A., another third to B., and the remaining third to C., "for the term of their natural lives respectively, and from and after their decease to vest absolutely in their heirs forever." C. died intestate and without issue, leaving a widow.

   *Held*, that his share under the above will passed upon his decease to his sisters, A. and B., and not to his widow.

April 3, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

APPEAL from a decree of the Orphans' Court of *Philadelphia county:* Of January Term, 1884, No. 144.

This was an appeal by Caroline E. Dodge and Sarah V. Blake from a decree of the said court, sustaining the exceptions of Mrs. Amelia Ryan to the adjudication upon the account of Samuel White, trustee under the will of Letitia G. Ryan, deceased, and awarding to the said Mrs. Amelia Ryan the sum in dispute.

The facts of the case were as follows: The testatrix, Letitia Ryan, died testate, leaving surviving her a husband, two daughters, Caroline E. Dodge and Sarah Virginia Blake, and one son, Edward W. Ryan. By her last will she devised certain real estate to one Samuel White in trust, to permit her husband to occupy or rent the same, "and to receive, take,

hold and enjoy the rents, issues, profits and income thereof to his own use absolutely" during life, and after his decease "one third of the aforesaid rents, issues, profits and income to be paid to Caroline E. Dodge, one third to be paid to Sarah Virginia Blake, and the remaining third to be paid to Edward W. Ryan for the term of their natural lives respectively, and from and after their decease to vest absolutely in their heirs forever." The will also gave the trustee a qualified power of sale, which was never executed. Subsequent to the death of the testatrix her husband died, and the said real estate was sold under proceedings on a mortgage, the lien of which antedated the title of the testatrix. The balance of the proceeds of the sale, after payment of the mortgage, was invested by the trustee in another mortgage.

Edward W. Ryan died in January, 1883, intestate and without issue, leaving surviving him a widow, Mrs. Amelia Ryan.

On the audit of the trustee's account, before HANNA, P. J., the whole of the income which had accrued from said mortgage since the death of Edward W. Ryan, and which constituted the fund for distribution, was claimed, on the one hand, by his sisters, Caroline E. Dodge and Sarah Virginia Blake, and one third part thereof was claimed, on the other hand, by his widow, Mrs. Amelia Ryan, in her own right, as his "heir" under said will. The auditing Judge reported as follows:

"A claim is now presented by Mrs. Ryan, not as administratrix, but as 'heir' of her deceased husband, to be awarded one third of the income collected since the death of her husband, as indicated in the account. The consequence being that, if successful, she will then be entitled to one third of the *corpus* of the trust estate in the hands of the accountant, the same having been held in trust for her husband during his lifetime. . . . . . But the widow cannot take any interest in the fund, for the reason that as respects real estate she is not considered as an heir of her husband. If he dies seised of real estate, she has her dower at common law, or her statutory dower, according to circumstances. But when he has but an equitable life estate, his interest ceased upon his death, and the remainder passes under the will. In the present case, the 'heirs' of Edward W. Ryan are his two surviving sisters."

Exceptions filed to this adjudication by Mrs. Amelia Ryan were sustained by the court, ASHMAN, J., filing the following opinion:—

"If the trust were executed, the absolute interest passed to the son, and the right of the widow was assured. The amount of his interest, however, is immaterial, if the widow shall be held to be entitled under the gift to his heirs. Her eligibility to take in the character of heir was regarded in Clark *v.* Scott,

17 P. F. S., 446, as clouded with some doubt, but the doubt was so greatly in her favor, that until a release of her interest should be forthcoming, the purchaser's title to the estate was held unmarketable. The reason of the thing seems to incline to her heirship, and is found in the very definition of the word. The heirs of a decedent are such persons as would be entitled to represent him by the law of the country. Patterson *v.* Hawthorn, 12 S. & R., 114. ' In this state when the word *heir* is used as a word of purchase, it means statutory heirs, those persons designated by the Intestate Act, to take the estate.' Clark *v.* Scott, *supra,* p. 452. At common law neither the husband nor wife could be heir to the other. Our statute of distribution left the husband, as to the wife's real estate, in the position he held at common law. But it took away from the wife her dower, and gave her as a substitute an interest which is so far superior to her common law dower that it has been held to attach to an estate in remainder which had vested in her husband, while the particular estate was still outstanding at his death: Cote's Appeal, 29 P. F. S., 235. It is an estate and not a lien: Thomas *v.* Simpson, 3 Barr, 70; Schall's Appeal, 4 Wr., 177, and it may be sold on execution for her debts: Shaupe *v.* Shaupe, 12 S. & R., 13; Miller *v.* Leidig, 3 W. & S., 458; Schall's Appeal, *supra.* The wife's interest, therefore, unlike the husband's, is wholly a statutory interest, and she takes an estate of the same quality as that taken by the descendants. The question has been discussed in Potter's estate, 13 Phila., 318, and Abbey's Estate, 13 W. N. C., 535, and following the reasoning in those cases, we must hold that the exceptant is entitled to one third of the share in dispute."

Caroline E. Dodge and Sarah V. Blake thereupon took this appeal, assigning as error the action of the court in entering the said decree.

*George Junkin,* for the appellants.—The word " heirs," when used in a will, must be construed in its legal or technical sense, unless there is a clear intent expressed in the context to the contrary: Jesson *v.* Wright, 2 Bligh, 1; Auman *v.* Auman, 9 Harris, 347; Porter's Appeal, 9 Wr., 201. No such intent is expressed here, but, on the contrary, the presumption is strengthened by the word " forever." What, then, is the technical meaning of the word " heirs " ? It certainly does not mean the widow to the exclusion of sisters of the decedent. The cases in which the widow has taken under a bequest to " heirs " were all cases where the word " heirs " was, by force of the context, construed to mean distributees, and were all cases where personal property was the subject in

dispute. The intestate law, while it gives her the real estate, if the decedent "leave no heirs or other known kindred," does not make her an "heir," but sharply makes the distinction between the status of a widow and that of the "heirs."

*Carson* (with him *Redding* and *Jones*), for the appellee.— The word "heirs," when used as a word of purchase, means statutory heirs, *i. e.*, those designated by the intestate laws to succeed to the estate in the event of intestacy: Aspden's Estate, 2 Wallace, Jr., 368; Clark *v.* Scott, 17 P. F. S., 449; Walker *v.* Walker, 4 Casey, 40; Dodson *v.* Ball, 10 P. F. S., 500. The widow is within that designation. Under the intestate laws she may succeed in whole or in part to her husband's real estate. She is one of the "heirs" designated by law. Her interest is an estate, not a lien. The strict letter of the Intestate Act may not speak of her as "heir," but neither does it of "children," "grandchildren," "brothers," "sisters," etc., who are admittedly heirs. She is therefore entitled to one third of one third of the principal and income of the estate in fee. She takes such share as a purchaser under the will of the testatrix, and not by distribution under the Intestate Act.

Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

This contention hinges on the construction of the hereinafter quoted clause in the will of Mrs. Letitia G. Ryan, who died, leaving her husband, a son and two daughters surviving her. The testatrix devised certain real estate to her brother Samuel White, in trust to permit her husband to occupy or rent the same, " and to receive, take, hold and enjoy the rents, issues, profits and income thereof to his own use absolutely," during life; and, after his decease, "one third of the aforesaid rents, issues, profits and income to be paid to Caroline E. Dodge, one third to be paid to Sarah Virginia Blake, and the remaining third to be paid to Edward W. Ryan, for the term of their natural lives, respectively, and from and after their decease to vest absolutely in their heirs forever."

The passive trust in favor of testatrix's husband having terminated at his decease, the active trust for the benefit of her son and daughters commenced and continued until the death of her son Edward W. Ryan, who died in January, 1883, intestate and without issue, leaving a wife, Amelia Ryan, the appellee, surviving him. Letters of administration on his estate were granted to her in the State of Oregon, and, as such administratrix, she received the arrears of income due

her husband up to the date of his decease. She then claimed, as his heir, under the clause of the will above quoted, one third of the income since accrued, and, from the decree in her favor, this appeal was taken by her sisters-in-law.

The devise to the trustee was coupled with a qualified power of sale, which was never executed; but the land devised was sold on a mortgage, the lien of which ante-dated the title of testatrix. After payment of the mortgage debt out of the proceeds of sale, the residue was paid to the trustee, and thus became the *corpus* of the trust from which the income for distribution was realized. In view of the facts, it cannot be doubted that the fund represents real estate, and hence it must be distributed accordingly.

The question thus presented by the record is, whether, under Mrs. Ryan's will, the portion in which her son Edward had a beneficial interest, during life, now goes to his widow or to his sisters. In other words, is the widow the "heir" of her husband, or are the appellants his "heirs," according to the true intent and meaning of the will? If the fund for distribution were personalty the widow would perhaps be entitled to participate therein; but inasmuch as it bears the impress of realty, the one third in which Edward had an equitable life interest was given by his mother's will to his "heirs forever." In the devise over of the remainder in fee, to take effect immediately upon the expiration of the equitable life interests respectively, the testatrix used the technical word "heirs," which, in a will, is to be understood in its legal or technical, and not in its popular sense, unless the contrary intent is so plainly apparent that it cannot be misunderstood: Porter's Appeal, 9 Wright, 201; Eby's Appeal, 14 Id., 311; Tillman *v.* Davis et al., 95 N. Y., 17. No such intent is even suggested by the phraseology of the will in this case. There is nothing in the language of the testatrix to warrant the belief that she intended to use the word "heirs" in any other than its well settled legal signification, meaning those who, upon Edward's decease intestate, would take immediately from him an heritable estate. The heirs of a decedent are those of his kindred upon whom the law, immediately upon his decease, casts the estate in real property, and the estate, so descending to the heir, is called the inheritance: 2 Minor's Inst., 452; 2 Bl. Com., 201. It is conceded that at common law neither the husband nor the wife could be heir to the other; and, while our Intestate Act has made some changes in the interest to which a widow is entitled in the estate of her deceased husband, she is not in any proper sense of the word recognized as his heir, except, perhaps, in the case of his dying without "known heirs or kindred competent" to take, in which event

alone an estate of inheritance is vested in the widow under the tenth section of the Act. In all other contingencies her interest in her husband's estate is unlike that of an heir. While she acquires an interest or estate in the land, and not a mere lien thereon, that interest is of a special and peculiar nature, essentially different from the estate of inheritance which the law casts upon the heir.

For reasons thus briefly suggested, we think the conclusions of the learned President of the Orphans' Court, sitting as auditing Judge, are correct: that under his mother's will, Edward W. Ryan had merely an equitable life interest, and immediately upon his decease the remainder in fee passed absolutely to his "heirs," who, according to the true intent and meaning of the will, are his two surviving sisters.

The decree of the Orphans' Court is reversed at the costs of the appellee; and it is now considered and adjudged that the decree of the auditing Judge be affirmed.