## Baumann v. Baumann et al.

*Ira B. Rutherford* and *A. E. Howell*, for plaintiff.
*Lester R. Male, J. Wilson Ames*, and *James Rutherford*, for defendants.

BODIE, P. J., April 12, 1948.—This is an amicable action of ejectment brought upon an agreed statement of facts which may be summarized as follows:

1. Edward H. Baumann died August 5, 1903, leaving a will disposing of his real and personal property.

2. The real property in question consists of a residence on Fourteenth Street in the Borough of Honesdale and a one-half interest in a business property on Main Street in the Borough of Honesdale.

3. John J. Baumann, a brother, one of the named legatees in the will of Edward H. Baumann, died without issue May 20, 1933, and by his will, dated April 10, 1928, devised his entire estate to his widow, Gertrude Baumann.

4. Charlotte J. Baumann, the last surviving life tenant, died without leaving any direct heirs on May 4, 1947, and by her will, dated March 18, 1947, devised the Fourteenth Street residence to the Wayne County Home Association (then known as "The Seven Maples") and the Main Street property to Gertrude Baumann for life subject to certain conditions and then to the Wayne County Memorial Hospital.

5. William C. Baumann, a brother, is still living.

6. The family "tree" of the testator is as follows:

JOHN MARTIN BAUMANN
Born: February 22, 1824          Died: July 8, 1902.
CHILDREN OF JOHN MARTIN BAUMANN
1. GOTTLOB BAUMANN
   Born: October 20, 1851
   Died: May 15, 1875
   Unmarried and without children.
2. Edward H. Baumann (Testator)
   Born: November 16, 1854
   Died Testate: August 5, 1903
   Married: Julia F. Wilken—October 18, 1877, who died December 1931.
   Daughter: Only child.
      Charlotte J. Baumann
         Born: October 16, 1879
         Died Testate: May 12, 1947
         Unmarried and without children or direct heirs.
3. George M. Baumann
   Born: September 18, 1859
   Died: March 3, 1868
   Unmarried and without children.
4. John J. Baumann
   Born: September 18, 1861
   Married: Gertrude Baumann — August 14, 1914
   Died Testate: May 20, 1933
   Without issue
   Devised estate to widow, Gertrude Baumann.

5. William C. Baumann (Widower)
   Born: June 22, 1864
   No children.

Briefs have been filed by the Wayne County Home Association, the Wayne County Memorial Hospital, Gertrude Baumann, widow of John Baumann, and William Baumann, as the sole surviving named legatee of the will of Edward H. Baumann, all of which, with the exception of the Wayne County Memorial Hospital, claim title to the real estate predicated on varying theories.

How this issue must be resolved depends on the construction of the will of Edward H. Baumann, the relevant portions of which are as follows:

Second paragraph—"I give and bequeath to my wife, Julia F. Baumann, the sole use income and control of all my real and personal estate while she remains my widow."

Third paragraph—"Upon the marriage or death of. my said wife, I give and bequeath the sole use, income and control of all my real and personal estate to my daughter, Charlotte J. Baumann, during her lifetime. And if said daughter shall marry and have issue then after her death I give devise and bequeath all my said property real and personal to her child or children then living; or to their heirs share and share alike. Provided however that any bequest to my said daughter shall be without any interest or control of any husband she may have."

Fourth paragraph—"In case of the death of my daughter without leaving any direct heirs either before or after my said wife then subject to the interest hereinbefore devised to my said wife, I give and devise one half of all my said property to my brother, William C. Baumann, during his lifetime, and one half thereof absolutely to my brother, John J. Baumann, or his heirs; and after the death of said William C. Baumann, I give and devise the share devised to him for life to John J. Baumann or his heirs."

The Wayne County Home Association claims title to the Fourteenth Street residence on the following theory:

The ultimate bequests to "John J. Baumann or his heirs" failed because the phrase connotes a substitutionary gift and John J. Baumann having predeceased the life tenant then only his "heirs" could take. It reasons further that "heirs" should be interpreted as "direct heirs" (as that phrase is used in the first part of paragraph four) and John having died without leaving direct heirs, to wit, children, an intestacy resulted. Charlotte J. Baumann as the only child of Edward H. Baumann would be his sole heir. Therefore, the title to the residence of testator passed to the Wayne County Home Association by virtue of the will of Charlotte J. Baumann.

We would suppose that this position would be adopted by counsel for the Wayne County Memorial Hospital, but, for reasons which escape us, it has filed a brief disclaiming any interest and contending that title to the interest in the Main Street business property passed to Gertrude Baumann, the widow and devisee of John J. Baumann, rather than to the Wayne County Memorial Hospital.

Gertrude Baumann, as devisee under the will of John J. Baumann, contends that by the will of testator John J. Baumann was given a vested contingent remainder and that, a vested contingent remainder being transmissible, she became the owner of the said remainder interest in fee subject only to the life use of the one-half interest given to William C. Baumann.

William C. Baumann bases his title on the fact that John J. Baumann predeceased the last life tenant. He contends that the phrase "John J. Baumann or his heirs", in light of the context of the whole will, is an alternative or substitutionary devise and that John J. Baumann not being alive to take, he, William, being

the only "heir" of John living at the death of the life tenant took this remainder interest.

We will first consider the position of the Wayne County Home Association and the Wayne County Memorial Hospital which must be predicated on the same theory. It is well settled that the law abhors an intestacy. To construe the word "heirs" to mean "direct heirs" or "children" we must find that the words are clearly used in that sense by testator and that no other construction could be placed upon them.

"In its legal and technical sense the word 'heir' is understood as designating the persons appointed by law to succeed in case of intestacy, and wherever the word occurs in a will unaccompanied by qualifying or explanatory expressions, it must be allowed the meaning the law gives it, and those only will come within the class thus described who would take under the intestate laws. And where qualifying expressions are relied on to give other than technical meaning, these must be so direct and unequivocal as to imperatively require such interpretation. 'A testator may doubtless use the word "heirs" as synonymous with children, but his intent thus to use it must be gathered from something more than implication. It must be expressed.' ": Beck's Estate, 225 Pa. 578, 581.

"The word 'heirs' may be construed to mean children or grandchildren, when such is necessary to effectuate the intention of the testator as gathered from the whole instrument, particularly when so directed by statute; but such a meaning cannot be assigned to the word unless it clearly appears that it was employed by the testator in that sense. The testator's intent to have 'heirs' mean children, according to some authority, must be gathered from something more than mere implication, supposition by the court, or the mere use of negativing or restraining words.": 69 C. J. 213.

In argument of the case it was called to the court's attention that this will was drawn by the late Alonzo

T. Searle, whose name also appears as a witness on the will and who afterwards became president judge of the courts of Wayne County, where he served for 23 years, and, therefore, the legal meaning of the words was well known to the scrivener and a careful reading of the will shows that the words used in the will were carefully chosen with the intent of conveying the intent of testator in clear concise legal language.

Testator used the phrase "In the case of the death of my daughter without leaving any direct heirs—", thus clearly showing that he knew the meaning of "direct heirs". He also used the word "issue" in the third paragraph of his will. Had he intended the substitutionary devise to "issue" or "direct heirs" of John he would have clearly stated it in the will. We do not find anything in the will that could lead us to the conclusion that testator by the phrase "to John Baumann or his heirs" meant issue or direct heirs, failure of which would cause an intestacy. We believe they are used in their ordinary sense, meaning those persons who would inherit in case of intestacy.

The crucial question is whether the language of the will, considered as a whole, together with the circumstances surrounding testator at the time he executed the will, indicates an intent on the part of testator to give a vested estate to John J. Baumann at testator's death, subject to be divested in case Charlotte Baumann died leaving direct heirs, or whether there was a substitutionary or alternative devise to the heirs of John Baumann, and John could only take under a double contingency, viz: First, Charlotte must die without issue and, second, John must be alive at the time of the death of Charlotte, without issue, to take.

Our courts, in construing wills, are guided by certain recognized and well settled principles. For instance, it is a cardinal rule that the actual intent of testator must prevail when it can be ascertained from the language of the will: Keefer Estate, 353 Pa. 281,

283, 45 A. (2d) 31. Regard must be had to the whole scheme of the will: Lefebvre v. D'Arcy, 236 Pa. 235, 238, 84 Atl. 765; Fink et al. v. Stein, 158 Pa. Superior Ct. 464, 468, 45 A. (2d) 249. Likewise, a will must be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of testator as extracted from the whole will should follow from so reading it: Riegel et al. v. Oliver et al., 352 Pa. 244, 247, 42 A. (2d) 602. The question, in construing or expounding a will, is not what testator may have meant but what is the meaning of the words actually used: Myers Estate, 351 Pa. 472, 474, 41 A. (2d) 570; Conner's Estate, 346 Pa. 271, 273, 29 A. (2d) 514; Tombs Estate, 155 Pa. Superior Ct. 605, 609, 39 A. (2d) 367; Loughran's Estate, 144 Pa. Superior Ct. 88, 92, 18 A. (2d) 676.

As Chief Justice Maxey has so well said in Jackson's Estate, 337 Pa. 561 at p. 565:

"Among the accredited canons which are applied in interpreting wills which do not unmistakably reveal the maker's intention, are the following: (1) 'The law will impute to a testator's words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice': Johnson v. Brasington, 156 N.Y. 181, 185, 50 N.E. 859. (2) 'In determining the testator's intention the court should place itself as nearly as possible in his position, and hence . . . should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed . . ., the state of the property devised,' the amount and character of the property of the testator when he made his will (McGlathery's Est., 311 Pa. 351, 166 A. 886), and 'the testator's relation to the beneficiaries, their condition or necessities': 69 C.J., p. 63, sec. 1120. As this court said in McGlathery's Est., supra, quoting from a well known English case:

'You may place yourself, so to speak, in the testator's arm-chair and consider the circumstances by which he was surrounded . . . to assist you in arriving at his intention.' See Jarman on Wills, 7th ed., 749."

As said in Brennan's Estate, 324 Pa. 410 at p. 414: " 'In construing wills the courts are always searching for the testator's true intent': Swentzell's Est., 294 Pa. 261; see also Allen v. Hirlinger, 219 Pa. 56; Yate's Est., 281 Pa. 178; Stanton v. Guest, 285 Pa. 460; Torchiana's Est., 292 Pa. 470; Mereto's Est., 311 Pa. 374; Scott's Est., 313 Pa. 155. At the same time, as has often been stated, every will is in a sense unique, and for this reason precedents are of little value, for words used in differing circumstances have varying meanings: Kirkpatrick's Est., 280 Pa. 306; Reiff v. Pepo, 290 Pa. 508; French's Est., 292 Pa. 37; Kidd's Est., 293 Pa. 56; Boyer v. Campbell, 312 Pa. 460."

Even a cursory reading of the will shows, in our opinion, an intent to confine testator's estate to members of the family and to exclude, as far as possible, any stranger to the blood from any interest therein. In paragraph 2 testator's widow was given a life estate only "while she remains my widow". In paragraph 3 testator's daughter was to have only a life estate "without any interest or control of any husband she may have" and in the event the daughter left any direct heirs then they or their heirs were to take if they survived her. In paragraph 4 testator provides further that should his daughter die "without leaving any direct heirs" then the remainder was to go to his brothers, one half to William for life and the residue to John Baumann "or his heirs". In short, we have in this will an attempt to have the dead hand control as long as the law would allow. For 44 years after his death testator's words were still operative.

Counsel have submitted to me a family tree. With it we may place ourselves "in the testator's arm-chair and consider the circumstances by which he was sur-

rounded". The will in question was made July 7, 1903, and death followed August 5, 1903. Possibly, it was made in contemplation of death. His widow, the first life tenant, was 50 years of age at the time of the execution of testator's will. His daughter, Charlotte, was, at that time, 22 years of age and *unmarried*. His brother, William, to whom a one-half life interest in the remainder was given should the daughter die without issue, was then 39 years of age and *married*. His brother, John, was 42 years of age and *unmarried*.

With these facts before us, it seems clear that testator intended to keep his estate within the Baumann family as long as possible, including all of the members of his family circle in the disposition of his estate, the ultimate gift in fee to be given to the issue of his daughter Charlotte, and upon failure of such issue to his brother, John, or his heirs.

Reading the will in its entirety we do not see that it requires any artificial rules of construction to determine the intent of testator, particularly in view of the circumstances surrounding testator at the time of his death. The will must be read and its meaning interpreted in the light of the circumstances by which testator was surrounded when he made it and by which he was very probably influenced; chief among which are the condition of his family, the natural objects of his bounty and the amount and character of his property: Miller's Estate, 323 Pa. 9.

John Baumann was 18 years older than Charlotte and in the ordinary expectancy of life could not be supposed to outlive Charlotte and take his remainder interest, except in case Charlotte should suffer a premature death. The obvious thing to do under the circumstances was to create an alternative or substitutionary gift in case of the death of John during the lifetime of Charlotte. This, we believe, was the clear intention of testator when he *twice* used the phrase "to John J. Baumann, or his heirs".

The contention of Gertrude Baumann rests on the assumption the remainder to John J. Baumann vested as of the death of testator, that a present gift was made by the terms of this will, and that only payment was postponed.

As a general rule the law favors vesting but precedents are of little value in the construction of wills because when used under different circumstances the same words may express different intentions. The applicable rule has been set forth in Patterson v. Hawthorn, 12 S. & R. 113:

"The rule is, that where a legacy is given to a person, to *be paid* at a future time, it vests immediately. But where it is *not given* until a certain future time, it does not vest until that time; and if the legatee dies before, it is lost. This is the rule, but in the application of it there is great nicety, and the adjudged cases can hardly be reconciled."

We think from the language of the will that the intention of testator is clear that he did not intend to make this gift until the death of Charlotte without direct heirs.

Before John J. Baumann could be said to have any definite predictable interest in the estate of Edward H. Baumann it was necessary that Charlotte die without leaving any direct heirs. The phrase "John J. Baumann or his heirs" implies indubitably that John J. Baumann must be alive at Charlotte's death in order to, even at that time, receive an interest under the will.

The brief submitted by counsel for Gertrude Baumann has assumed that the one question involved is "Is the devise to John J. Baumann vested or contingent?", and they have cited most of the important cases bearing on that subject, all of which we have carefully read. None of the cases submitted to us are identical with the present will.

To support this position they have cited Knerr's Estate, 130 Pa. Superior Ct. 383; Muhlenberg's Ap-

peal, 103 Pa. 587, and others which have held that a gift in remainder to testator's son "or his heirs" after a life estate in testator's widow was a gift that vested in the son at the father's death. The reasoning of these cases is that the gift was merely postponed to let in the interest of the widow. The Baumann will, however, is wholly lacking in similarity to that line of cases. We have a gift of the remainder *to brothers* and *not sons*. We have here two preceding life estates and the contingency that the brothers were not to have any interest if the daughter were to leave direct heirs. The words "or his heirs", in the cases cited by Gertrude Baumann, were clearly used to prevent a lapse should the devisee predecease testator and for no other purpose.

The distinction between the words "and" and "or" has been clearly laid down by our court in Simpson's Estate, 304 Pa. 396, where the court said:

". . . in a gift to A 'or' his heirs, the gift is in the alternative, clearly indicating both 'A' and 'his heirs' as objects of the gift, the 'heirs' taking in the event of the nonexistence of 'A'."

This rule has been followed as late as Lytle Estate, 160 Pa. Superior Ct. 247, where the court said:

"The word 'and' is not the equivalent of 'or' and may not be so construed in a will except when absolutely necessary to carry out the expressed intent of the testator. . . ."

To hold that "or" means "and" in this will would render the use of this word (which testator has used twice in the same paragraph) idle and nugatory. This would be inconsistent with the declared intention of testator as gathered from the whole will and the surrounding circumstances of the testator.

We think, further, that section 37 of A. L. I. Restatement of the Law of Property is applicable:

"When a conveyance contains a limitation of a future estate to 'A or his heirs', it is stated in §827,

Comment e that, in a deed, 'in the absence of evidence of a contrary intent' this limitation creates an estate in fee simple absolute in A. The policy of construing a will in accordance with the expressed intent of the testator permits a 'contrary intent', to be inferred from the form of this limitation when it is contained in a will, and further permits an inference of an intent to create alternative estates in fee simple absolute. *Hence such a limitation in a will normally is construed to create an estate in fee simple absolute in A, if A is alive when the limited estate becomes a present interest and in A's heirs if A is then dead.*" (Italics supplied)

The distinction between the words "and" and "or" is set forth in 69 C. J. 353:

"In the natural and ordinary meaning of words, it has been generally held that where no contrary intention appears a substitutionary gift is expressed by the disjunctive 'or', especially if the word 'assigns' is conspicuous by its absence. Thus, where a will devises property to one 'or' his heirs, or to one 'or' his issue . . . it creates an alternative devise, under which the heirs take by substitution. So, if a gift to B 'or' his children is preceded by a life estate to A, a substitutional gift is created in favor of the children of B in the event of the death of B before the death of the life tenant."

From the clear language of the will, the circumstances surrounding testator, and the law applicable thereto, we find that the devise to "John J. Baumann or his heirs" is a substitutionary devise. John J. Baumann having predeceased the life tenant, title to the real estate in question vested at the death of the life tenant in his heirs.

It, therefore, becomes necessary to determine the heirs of John J. Baumann, who take under the substitutionary devise.

We believe that the capacity to take as an heir under the intestate laws is to be determined by the laws in

force at the time of the execution of the will: Troxell's Estate, 90 Pa. Superior Ct. 533.

Certainly, after the death of testator and the probate of his will, the object of his bounty ought not to be subject to the biennially recurring contingency of a change in the statute: Arnold's Estate, 23 D. & C. 484.

The will was executed in 1903, prior, of course, to the Intestate Act of 1917. At common law and under the Pennsylvania Intestate Acts prior to 1917 neither husband nor wife was an "heir" to the other as to real property: Appeal of Dodge et al., 106 Pa. 216; Barnard Estate, 351 Pa. 313. In the present case, in addition to this rule of law, John J. Baumann was 42 years of age and unmarried at the time of the execution of the will. In view of this fact and the clearly manifested plan of testator to keep his estate within the Baumann blood, we do not see that he could have intended a widow of John J. Baumann to share in his estate.

The persons to take as heirs will be determined as of the date of death of the life tenant. It being a substitutionary devise, the persons to take could not be determined until the death of the life tenant: Barnard Estate, 351 Pa. 313.

William C. Baumann, brother of testator, is still living and under the intestate laws in force in 1903 is the only "heir" of John J. Baumann as to the real estate and as sole heir of John J. Baumann the remainders devised to John J. Baumann or his heirs vested in fee in William C. Baumann upon the death of Charlotte J. Baumann.

We have considered this case from all angles. We believe that when the will is read in its entirety and interpreted in the light of the circumstances surrounding testator the conclusion is inescapable that the remainder to John J. Baumann was contingent upon his being alive to take at the termination of the life estates

and that he never acquired any vested interest. The contingencies under which he was to take never happened in his lifetime; hence, under the substitutionary devise in the will the real estate passes to William C. Baumann, the only heir of John J. Baumann.

## Verdict

And now, to wit, April 12, 1948, for the reasons set forth in this opinion, we find in favor of plaintiff, William C. Baumann, for the premises described in the action of ejectment.