# Hermann's Estate.

*Will—Legacy—Interest on legacy—Life estate—Act of February 24, 1834, P. L. 70.*

Section 51 of the Act of February 24, 1834, P. L. 70, relating to interest upon legacies, has application only to legacies paid by an executor; it has no bearing upon legacies directed to be paid by a devisee who has elected to take a devise of land.

Where a testator gives the rents, issues and profits of his entire estate to his wife for life, and "subject to said life estate" devises a lot of ground to a son, provided the latter pays to testator's other children an amount stated, and it appears that the difference between the amount stated, and the valuation placed upon the lot by the testator was an amount which would equalize the devisee's share with the shares of the other children, interest will not be allowed on the legacies to the other children until after the termination of the life estate of the wife.

All the surrounding circumstances of the testator—his family, the amount and character of his property—may and ought to be taken into consideration in giving a construction to the provisions of his will.

Argued Nov. 14, 1907. Appeals, Nos. 209, 210, 211 and 212, Oct. T., 1907, by Flora E. Shillito et al., from decree of O. C. Allegheny Co., March T., 1907, No. 149, sustaining ex-

ceptions to adjudication in Estate of John A. Hermann, deceased. Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Affirmed.

Exceptions to adjudication.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in sustaining exceptions to adjudication and directing that the interest on the legacies should be payable from the date of the widow's death.

*W. H. S. Thompson*, with him *J. L. Ritchey* and *Frank Thompson*, for appellants.—The devisee had a right to accept the devise of this remainder subject to the burden imposed thereon by the testator, or he had a right to reject it. He chose to accept. Immediately upon its acceptance, a personal liability was created to pay the legacies and the land also became bound for its payment : Hoover v. Hoover, 5 Pa. 351 ; Lobach's Case, 6 Watts, 167.

Interest began to run from a year following testator's death : Maxwell v. Wettenhall, 2 Peere William's Rep. 26 ; Hertford v. Lowther, 9 Beavan, 266 ; Davies v. Davies, Daniell's Rep. 84 ; Freeman v. Simpson, 6 Simons, 75 ; Lynch's App., 12 W. N. C. 104 ; Jones's App., 3 Grant's Cases, 169 ; Koon's App., 113 Pa. 621 ; Bradford v. McConihay, 15 W. Va. 732.

*Charles W. Dahlinger*, with him *J. M. Stoner*, for appellee. —Interest ran from the date of the widow's death : Hamilton v. Porter, 63 Pa. 332 ; Trippe v. Frazier, 4 Harris & Johns. 446 ; Lord v. Lord, L. R. 2 Ch. App. Cases, 782 ; Wheeler v. Ruthven, 74 N. Y. 428.

Opinion by Mr. Justice Brown, January 6, 1908 :
John A. Hermann died December 8, 1897. By the second clause of his will, executed November 24, 1897, he gave the rents, issues and profits of his entire estate to his wife for life. By the third clause, "subject to said life estate," he devised to his son, John A. Hermann, the appellee, a lot of ground in the city of Allegheny, provided the devisee pay to his other children the sum of $18,000, to be divided among them, share

and share alike. The widow of the testator died November 18, 1906, when the appellee took possession of the lot devised to him. The sole question raised below and on this appeal is as to the time interest is to be allowed to the six children on their legacies of $3,000 each, which the son, as devisee, is to pay them. His contention, sustained by the court below, is that interest began to run only from the death of the widow —the life tenant of the lot·devised to him,—while that of the appellants is that they ought to be allowed interest from one year after the death of their father.

The court below properly held that section 51 of the Act of February 24, 1834, P. L. 70, has no bearing upon the question raised. That act is one "relating to executors and administrators," and, reading it through, it is clear that legacies which, under the 51st section, are to become due and payable at the expiration of one year from the death of the testator are those payable by an executor. The section immediately preceding gives a right of action to a legatee against an executor for the recovery of a legacy after it becomes due, and the one following provides that demand must be made by the legatee upon the executor for payment before suit is brought. All that was intended by the 51st section was to fix the time when a legacy becomes due if no time for its payment is fixed by the testator. With the legacies given to these appellants the executors of the testator had nothing to do. By John's acceptance of the land he and it became liable for their payment and for interest upon them from the time the testator intended they should be paid.

If the devise had given the appellee the right to the possession and enjoyment of the land immediately upon the death of his father, his acceptance of it would have been upon the condition that he immediately pay the legacies. The legatees would not have been compelled to wait for a year. They would have been entitled to their legacies the moment the devisee was entitled to the possession and enjoyment of the land out of which they were to be paid. As soon as he could have enjoyed his devise they could have asked for their legacies. "If one gives a legacy charged upon land which yields rents and profits, and there is no time of payment mentioned in the will, the legacy shall carry interest from the testator's

death, because the land yields profit from that time:" Maxwell v. Wettenhall, 2 Peere Williams, 26. From the time this land yielded rents and profits to the appellee these legacies carried interest.

In Hamilton v. Porter, 63 Pa. 332, the devise was to Hamilton of 100 acres of land, and he was directed to pay $700 to each of six named persons. Under the devise he was entitled to the possession of the land at the death of the testator. It was held that the possession of the tenant became his possession, and, in deciding that the legatees were entitled to interest on their legacies from the death of the testator, it was said: " The legacies bear interest also from the time of the acceptance of the devise upon the terms of the will. This grows out of the nature of the liability assumed by the acceptance of the devise. From the time of acceptance in such a case as this, where no clog or condition is imposed upon the possession or enjoyment of the land devised, the devisee's title takes effect. He is entitled to the immediate possession, unless it is held under an outstanding lease, and then he is entitled to the rents and issues of the land, as landlord, by the operation of the will. Such sums charged by a testator on the person of his devisee are not pure legacies as those are which the executor must pay, and, therefore, are not within the general rule that legacies are not payable until the end of the year and do not bear interest until then. There is no estate to be settled by the devisee and no reason for delay. As soon as he accepts the devise he assumes the burden, and is also entitled to the profits of the estate he accepts, when not incumbered by the testator by other provisions. Hamilton claimed the possession of the land soon after the testator's death, and claimed the rent of Buckley, the tenant." Here the appellant could not have claimed possession of the land immediately after his father's death, nor at any time thereafter before the life estate of the widow had been spent. The testator " incumbered " it by that estate. The " clog " imposed by him upon the devisee's possession of the land and enjoyment of the rents and issues thereof was this prior life estate; and the " condition " of the enjoyment of the devise was that the devisee should wait until that life estate was ended. Not until then could he enjoy his devise, and the only reasonable construction to

put upon the clause making it is that the testator intended that he should not pay the price fixed for it until he could enjoy it.

That the testator did not intend any of the bequests to be paid until after the death of the widow seems clear from what immediately follows the devise to John in the same clause of the will. After this devise the testator gave the rest of his estate to all of his children, including John, share and share alike, and directed that his executors should pay to William F. $10,000 out of the share given to him, the balance to be held for him in trust. This bequest to William was "subject to the life estate of the widow," for all the provisions of the third clause are made subject to it, the language of the testator at the beginning of the clause being, "Subject to said life estate in my wife as aforesaid I make the following disposition of all my estate, viz.:" If the legacies of $3,000 to these appellants were payable one year after the death of the testator, because, as they contend, the same are within the words, "in all cases," of the 51st section of the act of 1834, the legacy of $10,000 to William F. must have become payable at the same time and he would be entitled to interest from one year from the death of his father; but it can hardly be seriously contended that the testator intended that the legacy to William should be due and payable before the life estate of the widow had ended.

In Koon's and Wright's Appeal, 113 Pa. 621, upon which the appellants seem to place great reliance, interest was allowed from one year from the death of the testator, because, in the language of Mr. Justice GREEN, "The legacy of $10,000 to the appellee was absolute, without any condition as to its payment, and no time of payment was expressed in the will which gave it. Literally, the case, as to the question of interest, comes directly within the words of the Act of February 24, 1834, sec. 51." But the same learned justice added: "While we do not say that the mere absence of a limitation of the time of payment shall not of itself alone, regardless of the language of the gift and of all the circumstances attending a given case, suffice to bring the statute into application, we feel bound to say that the reason for not applying it must be of the clearest and most convincing character. There must be language or

circumstances apparent upon the face of the will showing that
the testator could not have intended the legacy to be payable
at the end of the year.   This was the case in Earle v. Belling-
ham, 24 Beav. 448, where the fund out of which alone the leg-
acies were to be paid did not come into existence for the pur-
poses of the legacies until after the death of the life tenant.
Substantially the same reason existed in Wheeler v. Ruth-
ven, 74 N. Y. 428." In Earle v. Bellingham, the testator,
John Cooper, who died in 1814, gave £7,000 in trust for his
wife for life, and, after her death, to his sister Mary Cooper.
She died in 1822, and by her will bequeathed legacies payable
out of this fund.   The widow of John Cooper survived his
sister Mary, the testatrix, thirty-three years.   Mary's leg-
atees claimed interest from her death on the legacies which
she had directed to be paid out of her reversionary interest in
her brother's estate, but it was held that the legacies carried
interest only from the death of the widow of John Cooper,
and not from the death of the testatrix, his sister, the Master
of the Rolls saying : " The right to a legacy and the right to
receive it is quite a different thing.   The right to a legacy
ordinarily accrues on the death of the testator, but the right to
receive it does not arise until twelve months after his death.
There are many cases in which legacies are vested, but no
right to receive them exists until a future period, as at twenty-
one, or marriage, and, unless there is a particular relation
between the testator and legatee, no interest is payable in the
meantime, interest being payable only from the time the leg-
acy is receivable. . . .   My opinion is, that the payment of
the legacies is postponed until the reversion fell in, and that
interest does not run until the legacies were payable, which
was on the death of the widow."   In Wheeler v. Ruthven et
al., the testatrix died in 1862, and by her will gave twenty-one
general legacies.   Her estate consisted solely of a residuary
interest, under the will of her father, in a fund of about
$30,000 and in the undivided half of a house and lot in the
city of New York, in both of which his widow and her mother'
was, by his will, given a life interest.   The mother survived
her daughter, the testatrix, and died in 1874, when the execu-
tors of the daughter came into possession of the residuary
estate.   Interest was claimed by certain of the legatees from

the date of the death of the testatrix, but, in disallowing this claim and allowing interest only from the death of the life tenant, it was said : " The rule that a legacy is payable one year after the testator's death only applies in the absence of a direction in the will controlling the general rule established by the courts, or other decisive indication in the instrument, interpreted in the light of the surrounding circumstances of a different intention of the testator. . . . The legacies did not become payable so as to bear interest until the falling in of the life estate of the testatrix's mother. The will does not in terms refer to the time when the legacies are payable, or direct that they shall be paid with interest. It must be assumed that the testatrix understood the condition of her property, and that until the death of her mother, she or her representatives could have no beneficial enjoyment of her estate, and that meanwhile the life tenant was entitled to the possession and the whole income. When the life estate would terminate was uncertain. It might terminate within a year after the death of the testatrix, or continue, as in fact it did, for several years after that period. There was no fund out of which the legacies could be paid during the lifetime of the mother. . . . The circumstances of the case fairly lead to the inference that the testatrix designed and intended that the legacies should be paid when, by the death of her mother, her estate should vest in possession, and that she did not intend that the legacies should draw interest during the pendency of the life estate, while her estate was earning no interest, and when an allowance of interest might result in depriving a part of her legatees of any benefit under the will."

While it is true that we must search for the intent of the testator only within the four corners of his will, when we come to consider it and interpret its meaning we must do so in the light of all the circumstances by which he was surrounded when he made it and by which he was probably influenced : Stambaugh's Estate, 135 Pa. 585. " It has been long and well settled, and indeed it is a principle so consonant to reason that the only wonder is that it should ever have been questioned, that all the surrounding circumstances of the testator —his family, the amount and character of his property—may and ought to be taken into consideration in giving a construc-

tion to the provisions of his will:" Postlethwaite's Appeal, 68 Pa. 477. A number of witnesses testified that the lot devised was worth, in 1897, when the will was executed, from $18,000 to $21,000. John C. McCombs, Esq., a member of the Allegheny county bar, who wrote it, testified that by a former will the testator had directed that $12,000 be paid by the appellee to the six children, the value which he at that time placed upon the lot having been $14,000 or $15,000, but that he subsequently valued it at $21,000, and, thinking the heirs' proportions, outside of John's, ought to be $18,000, directed him to pay that sum to them. His testimony was: "He thought the property worth about $20,000 or $21,000, and thought the other heirs ought to have $18,000." In making the devise of the lot to John, the intention of the testator undoubtedly was to benefit him: Jackson's Estate, 179 Pa. 77; but, on the valuation placed by the testator himself upon the lot, his son would not only have not derived any benefit from the devise if he had accepted it upon the terms insisted upon by the appellants, but certainly could not have been expected to accept it, for, instead of being a benefit to him, he could neither have sold nor mortgaged it for $18,000 in 1897, subject to the widow's life estate. How long she might survive her husband no one could foretell. She might live for many years. In fact she did, for nearly nine, and the uncertainty of the duration of her life made the reversion in John of most uncertain value. Certain it is that, upon the testator's valuation of the land, the legatees could not have been paid out of it at his death, clogged as it was with the widow's life estate. The decree of the court below gives the appellants all their father manifestly intended they should get from the lot, and it is, therefore, affirmed with costs.