## Jackson's Estate.

Argued January 8, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

562

·R. M. Remick, with him John Kennedy Ewing, 3rd, of Saul, Ewing, Remick & Saul, for appellants.

Richard K. Stevens, of Stradley, Ronon & Stevens, for appellees.

Joseph Marinelli, in propria persona, guardian and trustee ad litem.

OPINION BY MR. JUSTICE MAXEY, March 25, 1940:

· This is an appeal from the decree of the Orphans' Court of Philadelphia County, dismissing exceptions to the adjudication of the auditing judge and holding that the pecuniary legacies bequeathed to them under the will of Florence Baird Jackson, deceased, cannot to any extent be paid out of the appointive estates.

Florence Baird Jackson died a widow and without issue on November 30, 1936. After directing in her will, dated May 8, 1934, the settlement of all her just liabilities and the setting aside of $500 in trust, the income from which is to be used in maintaining the burial plot

in Laurel Hill Cemetery, she bequeathed to friends and relatives pecuniary legacies aggregating $47,000. She then provided by the 11th clause: "All the rest, residue and remainder of my estate, real, personal and mixed, of which I may die seised or possessed, or which I may have in expectancy or remainder, or over which I may have power of disposition by will, hereby expressly exercising any such power in me vested, I give, devise and bequeath to my Executor hereinafter named, in Trust, nevertheless, to take, hold, manage and control, and to invest and keep invested, and the net income therefrom to pay at quarterly, or other convenient periods, in equal shares, to my sister, Mary Baird Shakespeare, and my niece, Beatrice Baird Rutter Moore, for and during the terms of their natural lives." The 11th paragraph provided further that upon the deaths of Mrs. Shakespeare and Mrs. Moore, the corpus of the principal should be paid to the respective children of these beneficiaries, per stirpes, with additional provision to meet the possible contingency of default of descendants. In a codicil dated May 7, 1936, appears the following direction: "Ask the Trust to pay any debts that I may have left unpaid, and to give 500 frcs. to the St. John's Church, Territet."

At the time testatrix *made her will* she owned in her own right assets of the approximate value of $16,000 consisting, with the exception of some personal effects, of cash. At the time of *her death* she owned *in her own right* $5,104.22, and furniture and jewelry in Switzerland valued for tax purposes at about $8,600. In addition, she had a life interest in *two trust funds* over the principal of which she had the power to appoint by will. The one was created by an irrevocable deed of trust she herself made in 1883. The decedent received the income for life and upon her death the principal was given to her children or descendants if she had any (which she did not) and in default of issue, it reserved to her a general power of appointment. The other trust was

created in 1866 by decedent's father, Matthew Baird, which likewise gave her a general power of appointment. If the specific legacies are to be paid *in full*, the trust funds over which testatrix possessed the power of appointment by will must be drawn upon.

The trustees under the two deeds of trust filed separate accounts and the balances were awarded to the executor under decedent's will, with instructions to keep the funds separate to await disposition of the questions here involved and the final order of the Orphans' Court. Both funds were included in the account of the executor and showed the "Principal Balance Florence A. Baird Trust" to be $192,647.40, and the "Principal Balance Matthew Baird Trust" to be $98,077.00.

The pecuniary legatees contend that the decedent by her will so blended her individual estate and the appointive estates as to create a common fund out of which all bequests made by her should be paid. The residuary legatees deny any such blending except for the purpose of constituting the residuary estate. The auditing judge upheld the contention of the residuary legatees and awarded to the nine legatees, pro rata, only the property owned by decedent in her own right on the date of her death. Exceptions to the adjudication were dismissed by the court in banc, two judges dissenting. These appeals followed.

In deciding whether or not there is a blending of estates in cases like the one before us, there is judicial unanimity in holding that it is entirely "a question of the testator's intention." Since intention is a state of mind it, in the absence of an unequivocal expression of intent, must be determined by inference from relevant attendant circumstances. Since the significance of circumstances impress different minds differently, we almost always have in these cases a conflict of opinion as to what a testator's intent was. In the instant case, there is such a conflict of opinion, and the learned judges of the Orphans' Court of Philadelphia County have

reached conflicting conclusions and have supported their respective conclusions with able and learned opinions.

In the instant will we find no unequivocal expression of the intent of its maker as to whether or not the specific bequests were to be paid exclusively out of Mrs. Jackson's individual estate. The phrase, "all the rest, residue and remainder of my estate," relates grammatically to the phrase, "over which I may have power of disposition by will,". as much as it does to the words, "of which I may die seised or possessed." The "residue" etc., she is talking about may as well be the residue of the appointive estates as of the individual estate. No *rule of syntax* requires that the first part of the 11th paragraph of the will be interpreted as though it read as follows: "All the rest, residue and remainder of my estate, real, personal and mixed, of which I may die seised or possessed . . . *and also all of the estate over* which I may have power of disposition by will . . . I give, devise and bequeath . . ." We cannot agree with the learned President Judge of the court below that "nothing could be plainer" than the language of the 11th paragraph as it is written in the will. We think it is equally susceptible of the two conflicting interpretations now before us for review and therefore it is of no assistance to us in reaching a conclusion.

Among the accredited canons which are applied in interpreting wills which do not unmistakably reveal the maker's intention, are the following: (1) "The law will impute to a testator's words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice": *Johnson v. Brasington,* 156 N. Y. 181, 185, 50 N. E. 859. (2) "In determining the testator's intention the court should place itself as nearly as possible in his position, and hence . . . should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed . . .;

the state of the property devised," the amount and character of the property of the testator when he made his will (*McGlathery's Est.*, 311 Pa. 351, 166 A. 886), and "the testator's relation to the beneficiaries, their condition or necessities": 69 C. J., p. 63, sec. 1120. As this court said in *McGlathery's Est.*, supra, quoting from a well known English case: "You may place yourself, so to speak, in the testator's arm-chair and consider the circumstances by which he was surrounded . . . to assist you in arriving at his intention." See Jarman on Wills, 7th ed., 749.

Keeping these canons in mind, let us consider the following facts: One of the trust funds over which the testatrix had the power of appointment by will was the Florence Baird Trust amounting at the time of testatrix's death to $192,647.40. She herself had created this trust fund with her own money. Except in a very technical legal sense, this fund was Mrs. Florence Baird Jackson's own property. No one but she had any right to its income and she alone had the power to dispose of it by will. It would be most unusual if she did not look upon this trust fund as her own, in the fullest sense of the word, to do with as she pleased. This being the fact, it is difficult to find any reason why she would object to having this fund used, to the extent necessary, to pay the specific legacies she had directed in her will to be paid to her relatives, godchildren and friends. Among these relatives were a nephew and a niece and a brother-in-law and sisters-in-law. Having thought so kindly of these relatives and friends on May 8, 1934, when she made her will, as to bequeath them substantial sums, amounting in the case of the relatives and one friend, to $5,000, each, it is scarcely conceivable that Mrs. Jackson "seated in her arm-chair" would intend that a sister and a niece (and their descendants) would be the beneficiaries of trust funds totaling nearly $300,000, while the twelve relatives, godchildren and friends to whom she had bequeathed $47,000 should re-

ceive only pro-rata, shares of $5,104.22 (the balance actually available for these legacies, without deducting anything for "any taxes that may be found to be due").

To hold that the trust fund Mrs. Jackson had created out of her own funds and the trust fund created for her by her father and over both of which she had the power of disposition by will, should be used in part, if necessary, to pay the legacies which the testator was at pains to make to her relatives and friends, is certainly to "conform to" the testatrix's "probable intention" and is "most agreeable to reason and justice." This conclusion is strengthened by a consideration of the fact that, according to all available evidence, when testatrix made her will her individual estate amounted to only $16,000. While this fact is not conclusive on the question at issue, it has great probative value. We agree with the court below that "the implication from such a fact should not overcome the express language of the will," but, as we have already pointed out, there is in the will *no* such "express language" to be overcome.

It is unreasonable to believe that Mrs. Jackson would bequeath $47,000 to twelve relatives and friends when she knew her individual estate could not pay more than a small fractional part of these bequests, unless she expected that the trust funds which for years had been for all practical purposes her own and over which she had the power of testamentary disposition were available for the honoring of these legacies and unless she intended by the words used in the residuary clause of her will to blend her appointive estates with her individual estate to the extent necessary to carry out her testamentary directions. We are not justified in believing that as to these special objects of her bounty the testatrix would "keep the word of promise to their ears and break it to their hopes."

As against appellants' contention, attention is called to the fact that in 1925 testatrix made a will containing

a residuary clause in language identical with the residuary clause under the will now before us and that by a codicil made in 1928 to the 1925 will, she directed that "the legacies herein bequeathed shall be paid from my residuary estate, including any estate . . . over which I may have power of appointment by will." By a codicil in 1931 (to the 1925 will), she left similar directions as to two legacies of $5,000 each. From these circumstances the court below draws the inferences that (1) Mrs. Jackson "did not regard the clause in the residuary paragraph as blending her appointive estate for the purpose of the legacies in the paragraphs preceding the residuary clause"; and (2), when she wanted legacies to be paid out of the appointive estate she knew how to do it. While the logic of these inferences is not without some persuasive force, the force is decreased somewhat by the facts that neither Mrs. Baird nor the draftsman of the will were learned in the law and therefore it is unsafe to depend too much on inferences from their inclusion or omission of certain legal phrases. To a lay mind, the inclusion or omission of such phrases is of much less significance than to a legally trained mind. The draftsman of the will, Nelson C. Denny, testified (1) that he was "not a member of the bar," and (2) that Mrs. Baird gave him no instructions "from which fund the legacies were to be paid" and he asked from her no instructions on that matter. It is therefore a legitimate inference that the failure to express definitely in the 1934 will the intention that the specific legacies were to be paid "from my residuary estate, including any estate . . . over which I may have power of disposition by will" (as was provided in the 1928 and 1931 codicils to the will of 1925), was the draftsman's oversight and is devoid of significance. It is reasonable to believe that if Mrs. Jackson intended that the specific bequests should be paid only so far as her individual estate was adequate for that purpose, she would have

directed the draftsman to incorporate in the will an unmistakable expression of that intention.

It is also argued that since in the codicil of May 7, 1936, there appears the phrase: "Ask the Trust to pay any debts I have left unpaid" etc., and since in paragraph two of the will testatrix had already directed the payment of her just debts, "she did not construe the exercise of the powers in paragraph eleven as applying to paragraph two, and hence did not regard it as a blending for all purposes." The phrase: "Ask the Trust," is manifestly a direction to her executor, the Fidelity-Philadelphia Trust Company. In a letter to Mr. Denny on July 11, 1932, she said: "I leave it to the Trust to do what they think best." Here she obviously referred to the Trust Company as no one else could have been intended by the use of the word "Trust." If she in a letter referred to her executor as "the Trust" on July 11, 1932, we are warranted in inferring that on May 7, 1936, when she in a letter used the same words she meant the same thing. The verb "ask" as used in the 1936 letter clearly implies that animate executives of the Trust Company and not an inanimate trust *fund* were to be the object of the demand.

The court below based its decision on the decision of this court in *Valentine's Est.*, 297 Pa. 99, 146 A. 453. In that case the point involved was the right of the Commonwealth to collect an inheritance tax on an estate over which a testatrix had the power of appointment by will. It was held that her will did not evidence an intention to blend the appointive estate with her own to such an extent as to subject the former to the state inheritance tax. This court there said, quoting from an opinion in *Hagen's Est.*, 285 Pa. 326, 331, 132 A. 175: "It was not the purpose of the testator to blend the appointive estates with his own for all purposes, . . . what he intended was that the appointive estates should follow the same channels of distribution which he designed for the residue of his [own] estate." We then

added: "This is equally true here, for no reasonably clear indication appears in the present will of an intention to combine the two estates into a common fund *for all purposes;* which is enough to sustain the decree under attack [italics supplied]."

While it is not of great significance, one fact which further distinguishes the instant case from Valentine's Estate is that one of the trust estates, amounting to $192,647.40 was itself created out of the testatrix's own funds, while in Valentine's Estate the trust estate came from testatrix's husband. This fact would naturally lead her to look upon it as in every respect one to be dealt with as she would deal with her own individual property. In her mind at least, the estate held in her own name and the estate which she had herself created would be looked upon as "blended." Furthermore, as this court said in *Long's Estate,* 270 Pa. 480, 487, 113 A. 677 (quoting from an earlier opinion) : " 'Precedents are of little value in the construction of wills, because, when used under different circumstances and with different context, the same words may express different intentions. When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is of no avail.' "

In its opinion the court below said: "In case our conclusion on the principal question should be reversed we express the opinion that the legacies (including the benefits of the tax free clause) should be apportioned between the testatrix's own estate, and the two trust funds upon the basis of the net values of the three funds." With this we agree.

The decree of the court below is reversed and the record is remitted for further proceedings in accordance with this opinion; costs to be paid by the estate.