Fahey Estate.

498

Submitted October 5, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John F. Murphy,* for appellant.

*George Y. Meyer, Maurice Chaitkin, Ellsworth Jordan* and *Victor Voss,* for appellees.

OPINION BY MR. JUSTICE JONES, November 8, 1948:

The principal question on this appeal is whether the "Children and grand Children" specified in the will of John H. Fahey, deceased, take *per stirpes* or *per capita*. The controversy arises out of a suit for partition in the Orphans' Court of Allegheny County. The matter was here once before on an appeal from an order entered in a contemporaneous declaratory judgment proceeding instituted in the same court for the purpose of having the respective interests of the various beneficiaries of the decedent's estate determined ancillary to the *"partition suit already pending"*. Such a course, we held to be improper. It disregarded the procedure statutorily prescribed for partition in the Orphans' Court: see *Fahey Estate*, 356 Pa. 535, 52 A. 2d 580.

The question is now before us on its merits, the learned court below having entered a definitive decree in the partition proceeding determining the extent of the interests of the testator's widow (who elected to take against the will) and the devisees of his realty in remainder, viz., the testator's "Children and grand Children". The court held that the grandchildren meant by the testator embraced only such as were children of the testator's *deceased* son and daughter and that they and the testator's children take *per stirpes* and not *per capita*. This appeal is by the guardian and trustee ad litem of excluded grandchildren *in esse* or *in posse,* being the children (living or unborn) of the testator's *surviving* son and daughters.

The will was executed in February 1936 and was duly probated after the testator's death in April 1945. It is holographic and, as such wills frequently are, it is inartistically drawn. One of its more serious faults lies in its punctuation. In several places, the testator used periods to set off merely dependent or appositive clauses, thus leaving breaks in the context which can be properly resolved only by ascertaining and enforcing the true testamentary intent. Of course, in this, as in all other

cases of will construction; the intention of the testator is to prevail so far as it is disclosed by the language of his will: *Prime's Petition,* 335 Pa. 218, 222, 6 A. 2d 530; *Scott's Estate,* 313 Pa. 155, 157, 169 A. 73.

The portions of the will requiring construction read as follows:

"3—All the rest Residue and remainder of my estate Real Personal and Mixed where so ever situate, of which I may Die Siezed or Possessed or to which I may be Entitled at the time of my Desease. I give devise and bequeath to my beloved Wife Margaret Silvey Fahey, for and During her Natural life, in trust for my Children and grand Children

4—I do hereby mak Constitute and appoint, my son. Edward V. Fahey and my two Daughters. Gertrude Fahey Gens and Regina Fahey O Donnell, to be Executors of this my last will and Testament, and Direct that they be Permitted to Quallify and serve as such, without Bond or surety I charge them to be Just & true one to the other and to their nephews and Nieces. the children of my Daughter Hilda Fahey Charles and my Son John S. Fahey."

It is an oft-repeated rule of construction that, in interpreting a testator's intent, his will should be read in the light of the circumstances attending him when he made it, such as the condition of his family, the natural objects of his bounty and the amount and character of his property: *Mayer's Estate,* 289 Pa. 407, 410, 137 A. 627; *Frisbie's Estate,* 266 Pa. 574, 578, 109 A. 663; *Hermann's Estate,* 220 Pa. 52, 58-59, 69 A. 285. And, while the words employed in a will necessarily constitute the gauge of the testator's intent (*Ludwick's Estate,* 269 Pa. 365, 371, 112 A. 543), a construction that would lead to a highly improbable result is to be avoided, if at all possible; and a meaning conformable to the testator's plausible intent should be ascribed to his words if agreeable to reason: *Riegel v. Oliver,* 352 Pa. 244, 247, 42 A. 2d 602.

The appellant raises a preliminary question as to what beneficial estate, if any, the testator's widow took. Inasmuch as she has since elected to take against the will, the question of her interest under the will may seem academic, but it is of incidental importance in determining the decedent's testamentary scheme as a whole and the extent of the interests of the beneficiaries thereunder. The appellant contends that the devise and bequest to Mrs. Fahey of the residuary estate "for and During her Natural life, in trust for my Children and grand Children" constituted her a trustee for the children and grandchildren without any personal interest whatsoever in the testator's residuary estate. Obviously, such a construction would require a finding that the testator intended by his will to disinherit his wife of a lifetime, with whom he had lived, and, until his death at the age of eighty-seven, he continued to live, in amity. The latter fact is not without significance, considering the ambulatory character of the will wherein the testator described his spouse as his "beloved Wife". Beyond question, she was a primary object of his bounty. In such circumstances, is it conceivable that the testator not only intended not to provide for his aged wife—eighty-four years old at the time of her husband's death—but, also, to burden her with the trusteeship of an estate embracing, inter alia, twenty-two pieces of real estate? What sensible purpose could the testator have possibly thought he would subserve by placing his property in trust for his children and grandchildren *merely for the prospectively brief term of his wife's short expectancy?* Parenthetically, he appointed his surviving son and daughters as the executors of his will. And, what individual uses would the trust be designed to serve? The answer is that the decedent's plain testamentary intent was to devise and bequeath his residuary estate to his "beloved Wife" for her own use and conservation for life with remainder to his children and grandchildren. Such was the interpretation placed upon the will by the learned court below

which properly did not attach any controlling importance to the testator's use of the term "in trust". In *Groner v. Groner,* 105 Pa. Superior Ct. 302, 305, 161 A. 493, President Judge TREXLER, in construing a provision of a will (strikingly similar in material part to the present) said, —"We feel that the words 'in trust' have no legal significance. It is plain that the testator desired to create a life estate in his wife." As much can well be said here. And, in *Wilbur Trust Company v. Knadler,* 322 Pa. 17, 20, 185 A. 319, Mr. Justice DREW, speaking for this Court, said that ". . . the words 'trust,' 'trustee,' and other like descriptive terms are not in themselves sufficient to indicate a trust if in fact the trust is not complete in all its parts: [citing cases]". See also *Tunnell's Estate,* 325 Pa. 554, 556, 190 A. 906. Here, the will was peculiarly silent as to the management and administration of a trust *res* or the distribution of income therefrom.

The appellant's principal complaint is with the lower court's conclusion that, under the will of the testator, his children and grandchildren take *per stirpes,* the latter being limited to the children of his deceased son and daughter, both of whom had died prior to the execution of the will. No other inference can reasonably be drawn from the will. After appointing by name, his surviving son and daughters executors of his will, he therein expressly "charge[d] them to be Just & true one to the other and to their nephews and Nieces. the children of my Daughter Hilda Fahey Charles and my Son John S. Fahey". If the testator had meant by "grand Children" more than the children of his deceased son and daughter, is it not reasonable to suppose that he would have used some all-inclusive phrase such as "all of my grandchildren", and would he not, moreover, have charged his surviving son and daughters to be "Just & true" to "all" of their nephews and nieces, and not merely to such as were the children of the deceased Hilda and John? If the will were interpreted to mean that, in addition to the

children of the deceased son and daughter, the word "grand Children" was meant to include, as well, the children of the testator's surviving son and daughters, the result would run directly counter to the well-established rules of construction applicable to the interpretation of wills of doubtful or ambiguous meaning. Thus, under the appellant's contention, if adopted, more remote kin would be elevated to the status of those nearest of kin; distribution would not be made by classes (children of the testator's surviving son and daughters would share equally with their parents); and the scheme of the intestate law would be ignored: see *Wood Estate,* 154 Pa. Superior Ct. 628, 632, 36 A. 2d 835.

Still further confirmation of the correctness of the construction adopted by the learned court below is to be had. It is hardly open to dispute that, as between the testator's surviving son and daughters and his six grandchildren (being the children of his deceased son and daughter), distribution would be made *per stirpes*: *Miller's Estate (No. 2),* 26 Pa. Superior Ct. 453, 455, 457; cf. also *Harris's Estate,* 74 Pa. 452, 453; and *Minter's Appeal,* 40 Pa. 111, 115. As was said in *Mayhew's Estate,* 307 Pa. 84, 91, 160 A. 724,—"Apart from anything else, the justice of a per stirpes distribution cannot be denied." Yet, if the sons and daughters of the testator's surviving son and daughters were included in the group of grandchildren referred to by the testator, obviously a *per stirpes* distribution would not be possible: cf. *Mayhew's Estate,* supra, at pp. 91-92. The children of the surviving son and daughters, not taking by representation, would necessarily have to share *per capita* with their living parents. And, of course, in such circumstances, consistency would require that the children of the testator's deceased son and daughter also share *per capita,* thus defeating a just *per stirpes* distribution among the testator's "Children and grand Children". The rule that ". . . in the absence of a contrary inten-

tion, children do not take concurrently with their parents but the division is per stirpes" (see *Mayhew's Estate,* supra, at p. 91) refutes the appellant's suggestion that the testator meant to include among the participating "grand. Children" under his will the children of his own surviving children.. The will does not call for any such strained interpretation.

Decree affirmed; costs to be borne by the estate.