## Hoffman Estate

*Albert Loeb Katz*, for accountant.

*John Bishop, 4th,* and *George J. Hauptfuhrer, Jr.,* for Cushing Academy.

*Russell Conwell Cooney,* for Temple University.

*Joseph F. M. Baldi, 2nd,* for Mary J. Chambers.

*Drinker, Biddle & Reath,* for the trustees of the University of Pennsylvania.

*Louis Marion* for *Thomas D. McBride, Attorney General of Pennsylvania.*

KLEIN, P. J., November 17, 1958.—George F. Hoffman died February 4, 1951, leaving a will dated July 26, 1949, wherein he left the residue of his estate to trustees, with directions to "set aside and hold in trust a sum adequate to provide monthly payments of $200 to Mary J. Chambers for the remainder of her life". He provided, further, upon the death of his brother, Frank E. Hoffman, for the payment of $5,000 to Temple University Medical School and Hospital of Philadelphia for the establishment of a free bed and the balance of the principal and accumulated income to the trustees of Cushing Academy of Ashburnham, Mass., such fund to be known as "The Hoffman Foundation" for the following uses and purposes:

"Twenty-five (25) percent of The Hoffman Foundation shall be used for the purchase of ground and erection, furnishing and equipping of *either a school building, or a gymnasuim,* or both building and gymnasium, or to enlarge the present gymnasium, as the trustees of Cushing Academy shall determine, *free and clear of all liens and encumbrances,* for the education and or athletics of students of Cushing Academy. . . . In making this gift, I would like to assist in the realization of one of the ambitions of Mr. Cushing, the founder of Cushing Academy, if a school building is erected, to have separate school buildings for girls and boys; and I would like the Trustees of said Academy, but I do not make it obligatory, to use the school building for the

education of girls exclusively. *Neither the land nor the building* or buildings, its or their furnishings or equipment so purchased and erected or enlarged *shall ever be mortgaged, rented, liened or alienated in any way.* Realizing that the Trustees of said Academy might deem it unwise to purchase land or erect, furnish and equip a building or buildings immediately after the receipt of this bequest, *I direct that said Trustees shall have a period of ten (10) years after the death of my brother, Frank E. Hoffman, or after my death should my said brother predecease me, within which to purchase said land, erect, or enlarge, furnish and equip said building or buildings.* In the interim said legacy shall be invested, reinvested and kept invested, the income derived therefrom shall be accumulated and added to the principal thereof and used for the same purposes hereinbefore stipulated. Should the Trustees of Cushing Academy fail to accomplish fully and completely the matters and things herein provided or should they at any time fail or neglect to perform fully the conditions hereinbefore imposed, I direct that this legacy be paid in fee to the beneficiaries in paragraph twelve (12) hereof for the uses and purposes therein set forth. The fund created by this legacy may be added to from time to time by others as long as no term or condition hereinbefore set forth with respect thereof, including the names, is changed or altered." (Italics supplied.)

Testator directed that the remaining 75 percent of the fund should be set aside for the purpose of establishing scholarships.

He provided for gifts over to Temple University and the University of Pennsylvania, if Cushing Academy should not be functioning as an educational institution or cease to exist as a corporation prior to the death of the survivor of his brother, Mary J. Chambers and himself.

An account was filed in the court by the trustees following the death of Frank E. Hoffman, testator's brother, which occurred on August 1, 1955. In its adjudication upon this account this court awarded $120,-000 to the trustees to provide the annuity of $200 a month for Mary J. Chambers, for her life, and the balance was awarded to Cushing Academy to set up "The Hoffman Foundation".

On April 3, 1958, a petition was filed by Cushing Academy asking for a citation directed to Girard Trust Corn Exchange Bank and Roy Martin Boyd, trustees, Temple University, University of Pennsylvania, Dr. M. D. Collins, State Superintendent of Schools of Georgia, and the Attorney General of Pennsylvania to show cause why a decree should not be entered:

1. Authorizing Cushing Academy to expend the Hoffman Building foundation funds received by it from the trustees under the will of George F. Hoffman, decesaed, on account of the cost of construction of an infirmary building on a portion of petitioner's campus not subject to a mortgage or a lien; and

2. Authorizing Cushing Academy to use the income from the Hoffman Scholarship Foundation's funds received by it from the trustees under the will of George F. Hoffman, deceased, in excess of the amount needed for scholarships for boys and girls from the State of Georgia, for scholarships for boys and girls from other States of the United States.

### Scholarship Fund

It is not necessary for us to discuss the request to modify the provision with respect to the scholarship funds, because, at the hearing, Mr. Hauptfuhrer, counsel for petitioner, stated that during the current school year sufficient students from the State of Georgia have matriculated at Cushing Academy not only to consume entirely the income earned by the scholarship fund for the period but also to necessitate the use of

accumulated income. He therefore requested permission to withdraw the request for the cy pres application of the scholarship funds. His request is granted by the hearing judge without prejudice to the right of the parties in interest to raise the question again in the future, if and when the situation changes.

### Building Fund

The petition filed by the academy recites, inter alia, that:

"Petitioner's greatest need at present is for an infirmary for its students, faculty and staff. . . Petitioner desires to use the Hoffman Building Foundation funds for payment of part of the cost of such an infirmary to be located on a portion of its campus that is not subject to a mortgage or lien, but petitioner is not certain whether such use would be within the literal terms of the Will of George F. Hoffman in respect of the use of said Building Foundation funds."

On May 1, 1958, Girard Trust Corn Exchange Bank and Roy Martin Boyd, the trustees, filed an answer opposing the prayer of the petition. The case was first called for hearing on June 1, 1958, at which time Albert Loeb Katz, Esq., an associate of Mr. Boyd, appeared and stated that Mr. Boyd had died the preceding night.

The case was therefore continued generally. It was again listed for hearing on October 22, 1958.

At this hearing, Russell Conwell Cooney, Esq., appeared for Temple University, and Eric McCouch, Esq., entered an appearance for the University of Pennsylvania. The court was advised that the two universities were interposing no objection to the prayer of the petition.

Mr. Marion appeared on behalf of the Commonwealth of Pennsylvania and stated that the Attorney General had no objection to the academy's request. The

Attorney General of Massachusetts filed an answer in which he "neither admits nor denies" the allegation of the petition but raises no objection to the academy's request.

Vincent C. R. Booth, President of the Board of Trustees of Cushing Academy, appeared in support of the academy's request. From his testimony, it appears that Cushing Academy is a coeducational boarding school, located in Ashburnham, Mass., and has been in operation since 1870. It has a student body of approximately 250, of which 185 to 190 are boarding students. The academy is a secondary school and its curriculum covers the four years prior to admission to college. The school appears to be in sound financial condition and has a reasonably adequate physical plant. In 1954 the school was visited by an evaluation committee of the New England Association for Secondary Schools and Colleges, shortly after ground was broken for a modern gymnasium, which has since been completed at a cost of $360,000. The evaluation committee concluded that the academy's most pressing need with respect to its physical plant was a new infirmary.

Mr. Booth testified, page 26:

". . . At the present time the infirmary facilities are most inadequate. They consist of one or two small, segregated areas in the dormitories, and not only are they inadequate because of size and equipment but also, since they are in two places, it casts an additional burden on the nursing staff."

Mr. West, the headmaster, also appeared as a witness. He testified generally concerning the operations of the academy. From his testimony it appears that the school conducts an active athletic program as part of its activities and that the present infirmary facilities are wholly inadequate.

Donald C. MacFarland, Assistant Trust Officer of the Girard Trust Corn Exchange Bank, surviving

trustee, appeared and testified that he visited Cushing Academy in July of this year and made a tour of the campus and the buildings. He prepared a written report to the company, a copy of which has been made part of the record. In his report, Mr. MacFarland stated, inter alia:

"As a result of my inspection of the school, it is my opinion, in view of the number of resident students at Cushing Academy, an infirmary really constitutes an integral part of the school's athletic and educational program. In view of the report of the Evaluation Committee mentioned above, the construction of such a building would be a very desirable addition to the campus of the Academy."

In his testimony he reviewed the contents of his report and informed the court that the Girard Trust Corn Exchange Bank withdrew its objection, joined in the prayer of the petition and requested the court to grant it.

The academy, within the past two years, purchased a plot of ground upon which the infirmary is to be built. The estimated cost of erecting the building is $80,000. At the present time the market value of the Hoffman Building Fund is approximately $60,000. Last year the academy received $20,000 in gifts for the specific purpose of augmenting the Hoffman Fund to permit the construction of the infirmary, and containing no limitations or restrictions inconsistent with the terms of the gift under the will of the present testator.

Testator directed that the fund in question "be used for the purchase of ground and erection, furnishing and equipping of either a school building or a gymnasium, or both a school building and gymnasium, or to enlarge the present gymnasium, as the Trustees of Cushing Academy shall determine . . . for the education and or athletics of students of Cushing Academy.

There can be no serious question as to what testator meant by a "gymnasium". However, it is not so clear what type of building he had in mind by the use of the description "school building". Cushing Academy contends that an "infirmary" is a "school building" within the meaning of testator's language.

In Britt Estate, 369 Pa. 450 (1952), our Supreme Court said, at page 454:

"The pole star in the construction of every will is the testator's intent: *Woelpper's Appeal*, 126 Pa. 562, 17 A. 870; *Mulert Estate*, 360 Pa. 356, 61 A. 2d 841; *Byrne's Estate*, 320 Pa. 513, 181 A. 500. 'The testator's intent must be ascertained by a consideration of the *entire will* which of course must be read in the light of the circumstances surrounding him when he made it: Packer's Estate (No. 1), 246 Pa. 97, 92 A. 65; Hermann's Estate, 220 Pa. 52, 58, 69 A. 285; Mulert Estate, 360 Pa. 356, 61 A. 2d 841; March Estate, 357 Pa. 216, 53 A. 2d 606. The attendant circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property: Fahey's Estate, 360 Pa. 497, 500, 61 A. 2d 880; Mayer's Estate, 289 Pa. 407, 137 A. 627; Frisbie's Estate, 266 Pa. 574, 109 A. 663': *Newlin Estate*, 367 Pa. 527, 529, 80 A. 2d 819."

To the same effect see also Weaver Estate, 390 Pa. 128 (1957); McFadden Estate, 381 Pa. 464 (1955); Lyle Estate, 374 Pa. 344 (1953); Anderson Estate, 373 Pa. 294 (1953).

It seems clear that any structure essential to the orderly, efficient and safe operation of a boarding school such as Cushing Academy must be classified as a school building. This would include classroom buildings, dormitories, laboratories, administration buildings or any other similar building. In an institution of this character an infirmary must obviously be included in such a list. The administrators of the acad-

emy stand in loco parentis to the students who board at the school while they are away from home. The physical care of these students is as much a part of the school's responsibility as their academic education. This is particularly true in a school like Cushing Academy which conducts a comprehensive athletic program for its students.

Mr. Justice Maxey, later Chief Justice, said in Jackson's Estate, 337 Pa. 561 (1940), at page 566:

"As this Court said in *McGlathery's Est.*, supra, [311 Pa. 351] quoting from a well known English case: 'You may place yourself, so to speak, in the testator's arm-chair and consider the circumstances by which he was surrounded . . . to assist you in arriving at his intention.' See Jarman on Wills, 7th ed., 749."

Let us therefore place ourselves in testator's arm-chair and examine more closely testator's relationship to Cushing Academy.

It appears from a study of the testimony that he was born in Ashburnham, and was a trustee of the academy for approximately 45 years. He had "a continuing interest in the school in all phases of its activities, an interest which was exhibited by a constant stream of letters and contributions, large and small, to all phases of the school's activities". The Hoffman Pavilion, which is situated on one of the school's athletic fields, was constructed through his generosity.

Mr. Booth testified, at page 30:

"Q. What was the situation with regard to the school buildings in 1949 when Mr. Hoffman wrote his will?

"A. At that time it was the feeling of the Board of Trustees that the two major needs of the school were a new gymnasium and a new infirmary. That matter was discussed at board meetings and was noted in the minutes of the meeting, and both those matters were known to Colonel Hoffman.

"Q. Did he ever indicate any objection to either?

"A. No.

"Q. What was the situation with regard to school buildings in 1951 when Mr. Hoffman died?

"A. There had been no change. It was the same situation that existed at the time the will was drawn.

"Q. Is there any pressing need for additional classrooms or a gymnasium at the present time?

"A. There is no need whatever for additional gymnasium facilities. We have one of the finest gymnasiums of any private school in New England at this time, and the classroom area of the Main Building and the Science Building is fully adequate for all classroom needs."

No doubt exists that testator's primary object was to benefit Cushing Academy. Since arrangements had been made for the erection of an adequate, modern gymnasium in his lifetime, he must have known that it would be unnecessary to use his money for this purpose.

Moreover, as a practical consideration, it seems reasonable to assume that testator contemplated that some smaller structure would be built with the fund. He directed that the building which was to be erected was to be "free and clear of all liens and encumbrances". Testator, as a sensible man, must be presumed to have realized that a classroom building, a science building or some other major school structure would probably cost many times the amount of his beneficence and could not be erected without mortgages, on the basis of a fund so limited, within 10 years following his death, the period fixed in the will as the time within which the building must be completed.

It is also important to note that testator conferred discretion upon the trustees of Cushing Academy in the determination of the type of building to be constructed. This confidence must be respected and the

manner in which the trustees choose to exercise their discretion cannot be disregarded lightly by the court if such exercise conforms in a reasonable degree to testator's wishes.

Convinced that the infirmary is the most needed building on the Cushing Academy campus at the present time and satisfied that its erection is in complete harmony with testator's directions, the hearing judge accordingly concludes that an infirmary is a "school building" within the meaning of the language of the will.

Testator also provided in paragraph 11(4) of his will, as follows:

". . . If either a school building or a gymnasium is erected, or if the present gymnasium is enlarged, it shall forever be designated and known as 'Charles Morris Price Hall.' If both a school building and a gymnasium are erected, or if a school building is erected and the present gymnasium is enlarged, the school building shall forever be designated and known as 'George F. Hoffman Hall' and the gymnasium as 'Charles Morris Price Gymnasium.' . . ."

In view of the fact that only one building is to be erected and the gymnasium is not to be enlarged with the Hoffman funds, the new structure must bear the name of Charles Morris Price in accordance with testator's wishes. But since this building is to be an infirmary, it would seem more appropriate to name it "Charles Morris Price Infirmary".

We therefore enter the following

### Decree

And now, November 17, 1958, the prayer of the petition is granted and Cushing Academy is authorized to expend 25 percent of the funds in the Hoffman Foundation on account of the construction of an infirmary building on a portion of its campus not sub-

ject to mortgage or lien; said infirmary to be desig-
nated and known as "Charles Morris Price Infirmary".