## Ginter Estate

302

*David L. Baird*, for administratrix.

*Frank G. Smith*, for exceptant.

CAMPBELL, P. J., July 22, 1959.—Decedent, Evan L. Ginter, died a resident of Philipsburg Borough, Centre County, on March 24, 1955. In the office of his welding shop there was found a holographic will written with lead pencil on a sheet of his business stationery.

An exact copy thereof is as follows:

"Phone 799-R                             Res. 507 Pine St.

  315 N. 6th Street                      Philipsburg, Pa.

EVAN L. GINTER

Welding Shop

Supplies and Service

"To my Wife Florence May Ginter

  The disapation of My Estate

Will be as follows.

Camp Equal Shares   to (Harry Bratton
                      (Henry Ginter

"Guns Equally divided between Bratton Henry Hunter Lindy Flick Dean Dillion and William C. Ginter.

"All my money lot and building go to my wife  The business shall be run as usal with my Brother Bill being ½ Owner Ship if at any time its is disolved he Shall have ½ the rolling Equipment. Each Brother and Sister accept John shall be Paid $100. in money John shall be paid one Dollar $1.00. The coal land shall Be long to Bill.

"Laywer Richard Sharp shall be her att and this shall be considered My Will

                      (s)  Evan L. Ginter"

This case involved the determination of the intention of testator with respect to the following language found in his will:

"All my money lot and buildings go to my wife The business shall be run as usal with My Brother Bill being ½ Owner Ship if at any time its is disolved he Shall have ½ the rolling equipment."

It is the contention of the widow of decedent that this provision gave to her decedent's welding business and in the event it were run as usual, decedent's brother Bill was to have one-half of the profits and if the business were dissolved, decedent's brother Bill was to have one-half of the rolling equipment. On the other hand, exceptant contends that this provision gave to him one-half of the business assets and if the business were dissolved, he was to have one-half of the rolling equipment to be included in his share and that decedent died intestate as to the remaining one-half of said business.

Our appellate courts have frequently stated the clearly settled rules or canons of construction which

are pertinent in construing a will. In the consideration of this problem, in Weaver Estate, 390 Pa. 128, 131, the court said:

"In McFadden Estate, 381 Pa. 464, 112 A. 2d 148, the Court, quoting from Lifter Estate, 377 Pa. 227, 231, 103 A. 2d 670, said (page 467) : ' "The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all surrounding and attendant circumstances: Lyle Estate, 374 Pa. 344, 97 A. 2d 830; Brumbach Estate, 373 Pa. 302, 95 A. 2d 514; Newlin Estate, 367 Pa. 527, 80 A. 2d 819; Anderson Estate, 373 Pa. 294, 95 A. 2d 674." ' See also: Britt Estate, 369 Pa. 450, 454, 455, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 570, 119 A. 2d 60; Conlin Estate, 388 Pa. 483, 131 A. 2d 117."

Mr. Justice Bell in the case of Newlin Estate, 367 Pa. 527, clearly set forth various factors to be considered, and we quote from page 529 of his opinion:

"The testator's intent must be ascertained by a consideration of the entire will which of course must be read in the light of the circumstances surrounding when he made it: Packer's Estate (No. 1) 246 Pa. 97, 92 A. 65; Hermann's Estate, 220 Pa. 52, 58, 69 A. 285; Mulert Estate, 360 Pa. 356, 61 A. 2d 841, March Estate, 357 Pa. 216, 53 A. 2d 606. The attendant circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property: Fahey's Estate, 360 Pa. 497, 500, 61 A. 2d 880; Mayer's Estate, 289 Pa. 407, 137 A. 627; Frisbie's Estate, 266 Pa. 574, 109 A. 663."

Our Supreme Court has also held that: "When the intention of the testator can be ascertained by an examination of his entire will from the vantage seat of the testator's armchair '. . . technical rules or canons

of construction are unnecessary; it is only where the intent is uncertain or the language ambiguous that such canons should be resorted to: Haydon's Estate, 334 Pa. 403, 6 A. 2d 581; Snyder Estate, 359 Pa. 138, 58 A. 2d 178; Walker's Estate, 344 Pa. 576, 26 A. 2d 456:' Britt Estate, 369 Pa. 450, 455, 87 A. 2d 243": Edmunds Estate, 374 Pa. 22, 26; McFadden Estate, 381 Pa. 464; Richley Estate, 394 Pa. 188.

Precedents are of little value in the construction of wills as no two wills present the same problems: Jackson's Estate, 337 Pa. 561, 12 A. 2d 338; Dowd Estate, 176 Pa. Superior Ct. 203.

In determining testator's intention, if no uncertainty or ambiguity exists, his meaning must be ascertained from the language of his will; it is not what the court thinks he might or would have said in the existing circumstances, or even what the court thinks he meant to say, but what is the meaning of his words: Conner's Estate, 346 Pa. 271, 29 A. 2d 514; Ludwick's Estate, 269 Pa. 365, 112 Atl. 543; Britt Estate, 369 Pa. 450.

In a layman's will the language must be interpreted without reference to technical rules of construction: Ziegler Estate, 356 Pa. 93, 51 A. 2d 608.

A liberal construction is essential when the will is drawn by a layman: Lippincott's Estate, 276 Pa. 283; Shaffer's Estate, 262 Pa. 15.

With these rules or canons of construction in mind, what were decedent's attendant circumstances, the condition of his family, the objects of his bounty and the amount and character of his property?

Decedent was only 48 years old at the time of his death. He died childless leaving to survive him his wife to whom he had been married for 18 years. He and his wife had no separate home, owned no furniture and resided with his wife's mother in Philipsburg. The parties filed a joint income tax return. All bank ac-

counts, including the business account of the welding shop, were in joint names. It is apparent that decedent's wife assisted him with the books in the operation of the business and there is nothing in the testimony to indicate anything other than a congenial, happy husband and wife relationship.

The language of decedent's will is indicative of the fact that decedent had a very limited formal education. He worked for the Forestry Department during the Second World War and when this job ended, he and his wife moved back to his wife's home in Philipsburg where he picked up an hourly job as a welder. Being an ambitious chap, he decided to get a truck with a little welder mounted on it so that he could do extra work in the evenings. He used as his base for his operations the garage of his wife's brother. As business picked up, he and his wife decided to build a little shop on their lot instead of building a home. From this meager beginning, decedent built up a substantial welding business over a ten-year period in which he employed as many as four men. The business equipment included four trucks having mounted on them welding machines which were used for field work. The total inventory and appraisement of his estate was $34,616.65, and of this total the welding business and lot and the appraised value of the building amounted to $34,276.65. Decedent's debts for inheritance tax purposes amounted to $9,952.48. He owned no stocks or bonds and the value of his remaining estate outside of that portion used in the welding business was practically negligible.

The only natural object of decedent's bounty, in addition to his wife, was his younger half-brother, Bill, who is exceptant in this case. There is no doubt but that he was on friendly terms with him and wanted to take care of him. At the time the business was started,

decedent wanted exceptant to come in business with him but he refused. Approximately five years later, exceptant came to work for decedent at an hourly wage and continued as an employe of decedent until the time of decedent's death.

Next, let us examine decedent's entire will, including its language and its scheme of distribution, in order that we might determine the intention of testator.

It is important to note that the will is directed to his wife. It is clear that he intended her to be in charge of the settlement of his estate, indicating his confidence and trust in her. He then specifically devised the following personal property and real estate, to wit, his hunting camp, his guns, his interest in three small tracts of coal land to his brother Bill, and each brother and sister was to be paid $100 except John, who was to be paid $1. After making all of these specific bequests, what was there remaining in decedent's estate? Nothing except the assets of his welding business and the lot upon which was built the garage or shop which was used in connection therewith, which comprised almost 99 percent of the total assets of his estate. At this point, he has disposed of only approximately one percent of his entire gross estate.

In this situation decedent then makes a bold statement: "All my money, lot and building go to my wife". Technically there was no money in the sense of coin or cash in the estate. Although decedent did have several bank accounts titled in joint names of him and his wife, they never became a part of his estate. What then did testator mean by the word money in this phraseology? The court is of the opinion that he meant it to include his business and its assets.

In Williamson's Estate, 302 Pa. 462, 464, 153 Atl. 765 (1931), the court, in construing the word "money" as used in a holographic will, in that case stated:

"We agree with the court below that the testatrix, in using the word 'money' as she used it in the second paragraph of the portion of her will now before us for construction, intended it to comprehend her entire residuary estate; Talbot v. Anderson, 292 Pa. 454. In Ostrom v. Datz, 274 Pa. 375, 379, this court, speaking through Mr. Justice Shaffer, said, 'It is apparent from the will before us that in using the word "money" in the connection he did, testator intended to dispose of all his property remaining after the specific devise and bequests.' This use of the word 'money' is in good dictionary repute. Webster's New International Dictionary gives this as one of the definitions of money: 'Wealth reckoned in terms of money; capital considered as a cash asset; specifically, such wealth or capital dealt in as a commodity to be loaned, invested, or the like.' "

Our appellate courts have frequently held that "money" is popularly known and used as indicating property or wealth and will pass the entire estate including real estate: Jacobs Estate, 140 Pa. 268; Ostrom v. Datz, 274 Pa. 375; Talbot v. Anderson, 292 Pa. 454; Williamson's Estate, 302 Pa. 462; Ingham's Estate, 315 Pa. 293; 2 Hunter, Pa. Orphans' Court Commonplace Book, pp 832, 838.

In Ingham's Estate, supra, the final dispository clause of a homemade will provides as follows: "What is left of my money after my debts are paid; I wish given to The Baptist Home. . . ." The court construed the word "money" to mean wealth or property and further held that a will is not to be interpreted so as to produce intestacy as to any part of testator's estate if it can reasonably be construed so as to avoid such a result.

There is a strong presumption that a testator intends to dispose of his entire estate and not die intestate as to any part of it: Carmany Estate, 357 Pa. 296, 53

A. 2d 731; Renner Estate, 358 Pa. 409, 57 A. 2d 836; Duffy's Estate, 313 Pa. 101, 169 Atl. 142; Lyle Estate, 374 Pa. 344; Ostrom v. Datz, supra.

The court is not unaware of the equally strong presumption that an heir is never disinherited except by plain words or necessary implication, but this presumption has no place here inasmuch as decedent's wife is an heir and without question the primary beneficiary of testator's bounty.

While decedent does not use the words "rest or remaining" or words of similar connotation, nevertheless it was evidently his intention that this paragraph would have the effect of a residuary clause. It is significant to note that he used the word "all" and tied it together with the words "lot and building" without separation or punctuation and directed that it was all to go to his wife.

A residuary clause is one that covers all of the estate not disposed of after providing for debts and particular legacies and devises. No technical mode of expression is necessary to constitute such a clause. The position of the residuary clause is immaterial, it need not be the last of the dispositive provisions of the will: Bricker's Estate, 335 Pa. 300; Taylor's Estate, 239 Pa. 153; Shaw's Estate, 326 Pa. 456.

In the Rhode Island case of Industrial Trust Company v. Saunders, 71 R. I. 94, 42 A. 2d 492, the will contains strikingly similar language to the case at bar. There decedent used the words: "I give and bequeath *all my money & real estate to* Ruth Ross. . . ." The court held that the word money was not used only in the primary sense of cash but means personal property as distinguished from real estate. In the instant case, testator used the words "lot and building" instead of real estate.

What then is the intention of testator with respect to the words which follow: "The business shall be run

as usal with my brother Bill being one-half ownership if at any time its is disolved he shall have one-half the rolling equipment".

There is no doubt that testator desired his business to continue as he so directed. The operation of the business was apparently important to decedent and therefore the word "run" is a key to the interpretation of testator's intent. The expectant result of a running business is profits and therefore the language "with my brother Bill being one-half ownership" in the operating business, testator intended his brother to own one-half of the profits if the business were run. The next clause of the will is still more convincing and indicative of this interpretation. Recognizing the possibility of the dissolution of the business, he provided "if at any time its is disolved he shall have one-half of the rolling equipment". If the previous clause gave exceptant one-half of the entire business assets, why now bother with a provision giving him one-half of the rolling equipment? To so interpret the previous clause creates an even greater ambiguity.

The type and nature of the business we think is important in determining the intention of testator. The heart of the business was the four trucks upon which were mounted portable welders. The coal stripping machines upon which they worked were large and difficult to move and it was more practical and economical to take the welding equipment to the location of the machines. The trucks which testator called "rolling equipment" were a necessity and the most important part of the operation. There would seem no doubt that testator intended the operation of the business with his wife, having no knowledge of the mechanical operation of the welding business, handling the office, and his brother who knew the mechanical welding business handling that end and that each were to share equally in the profits. His next thought was to cover the con-

tingency of dissolution in which event he wanted his brother, Bill, to have two of the trucks so that he could go in the business for himself. By making these provisions he had taken care of both of the primary objects of his bounty. It is interesting to note that exceptant took his choice of two of the four trucks and was in business for himself immediately upon dissolution. We thing this position is strongly fortified by the presumption that testator did not intend a partial intestacy.

We think that the principle of law that an absolute gift cannot subsequently be cut down unless clearly intended by testator has no application here. First of all we do not feel testator intended to make an absolute gift of a one-half interest in the assets of the business to his brother, Bill, and secondly, the phrase regarding the rolling equipment is strong evidence to be considered in determining the intention of testator to create a less estate. Our appellate courts have so held in a number of cases: Duld Estate, 389 Pa. 108, 132 A. 2d 247; Wraught's Estate, 347 Pa. 165, 32 A. 2d 8.

There can be little doubt of what testator meant by the words "rolling equipment". While the court cases involving this phraseology invariably involve equipment trusts and railroads, nevertheless these words have common usage in the trucking industry with which testator was no doubt familiar. Rolling equipment could mean nothing more than equipment moved on wheels. The plain dictionary definition of "rolling" would indicate moving as if on wheels or rollers. In the plain common everyday language with which decedent was familiar rolling equipment would indicate the trucks with the accessories mounted thereon or used as an essential part in connection therewith. The only rolling equipment which decedent had in connection with the business were the four trucks with portable

welders mounted thereon. If decedent had not used the word "rolling" in this will, our interpretation of the gift of equipment would of necessity be greatly enlarged.

Counsel for exceptant takes the position that the word "rolling" should be excluded from the will on the basis of it being an unattested alteration and cites Teed's Estate, 225 Pa. 633. We do not believe that this case is controlling and is clearly distinguishable on the facts. In that case at the top of a page, other than where the testator's name and subscribing witnesses appeared, a clause was inserted. Here an adjective is inserted in a sentence apparently in the handwriting of testator and with the same pencil. It is the type of correction which is normally done by any author of any instrument at the time of its drafting to express the intention of the author. We feel that if this presumption is allowed to work in a case of this sort, testators' intention would be thwarted. Exceptant at one time took the position that the word "rolling" was a forgery and made use of a handwriting expert, but this contention was dropped early in the litigation, evidently because it was determined to be testator's own handwriting.

Counsel for exceptant argues strongly that the widow of decedent has but two alternatives, either to operate the business as usual or to take against the will of decedent. In other words, if the widow of decedent did not elect to take against the will of decedent, then she was under an obligation and duty to conduct the business in which decedent was engaged at the time of his death. Arguing from this position it is his contention that the operation of the business was a condition precedent to her recovery or that she should be penalized for not continuing to operate the business. With this position we cannot agree. Testator himself

provided for the contingency of dissolution. He did not specify or set up any standards or requirements that dissolution should only be affected if these conditions presented themselves. He stated that if at any time it is dissolved, then his brother Bill was to have one-half of the rolling equipment. We feel that the provision with respect to the operation of the business has nothing to do with the dispositive provisions of decedent's will. There is no doubt that it was the desire of decedent that the business be conducted as usual, but decedent certainly did not make that a condition precedent to anyone's inheriting the business assets.

## Order

Having determined the intention of testator as set forth in this opinion, all of the other exceptions raised in this proceeding are irrelevant and are therefore dismissed, and the first and final account of Florence May Ginter, administratrix c.t.a. of the estate of Evan L. Ginter is confirmed absolute with the exception that at the bottom of the page entitled schedule of distribution the words "in accordance with act of 1947, April 24, P.L. 80, Section 2, 20 P.S. 1.2" shall be deleted. Costs to be paid by the estate of Evan L. Ginter, deceased.